# EXHIBIT E



# FINRA Office of Dispute Resolution
# Arbitrator's Guide



This Guide contains important information about FINRA Office of Dispute Resolution services, policies and procedures. For additional information, please go to our website: www.finra.org or call one of our regional offices.

FINRA Office of Dispute Resolution attempts to present information to readers in a format that is easily understandable. However, please be aware that, in case of any misunderstanding concerning a rule in the Customer or Industry Code of Arbitration Procedure, the rule language prevails.

**February 2017 Edition**

# Table of Contents

This Guide contains important information about FINRA Office of Dispute Resolution services, policies and procedures. For additional information, please go to our website or call one of our regional offices.

Part One: Overview ....................................................................................................9

About the Arbitration Process .....................................................................................9

About FINRA ............................................................................................................10

About FINRA Office of Dispute Resolution ...............................................................10

    FINRA's Administrative Staff ................................................................................10

About FINRA Arbitrators ...........................................................................................11

    Arbitrator Honorarium ...........................................................................................11

    FINRA's Guidelines on Reimbursement for Expenses .........................................12

Part Two: Arbitrator Training .....................................................................................13

Basic Arbitrator Training Program .............................................................................13

Advanced Arbitrator Training .....................................................................................13

Continued, Mandatory Training ..................................................................................13

Part Three: The Arbitrator's Role—Ethical Considerations, Duty to Disclose, Challenges and Disqualification .................................................................................14

The Arbitrator's Role: Ethical Considerations ...........................................................14

    Neutrality ..............................................................................................................14

    Avoiding Potential Conflicts ..................................................................................14

    Ethical Reasons Not to Accept Appointment as an Arbitrator ..............................14

    Ethical Obligations Regarding Information Security ..............................................15

The Arbitrator's Role: Duty to Disclose..........................................................................17

    Disclosures Upon Appointment to Serve..............................................................18

    Disclosures After Appointment to Serve..............................................................18

    Disclosures at Hearings ........................................................................................18

    Disclosures in General ..........................................................................................18

The Arbitrator's Role: Challenges and Disqualification................................................19

    Motions to Recuse ................................................................................................19

    Challenges for Cause Before the First Hearing Session Begins .........................20

    Director's Authority to Remove an Arbitrator After the First Hearing Session Begins ...................................................................................................................22

Additional Resources ....................................................................................................22

Part Four: Before the Proceedings Begin......................................................................23

Determine Whether There Is a Senior or Seriously Ill Party Involved...........................23

    Discovery Deadlines .............................................................................................23

    Scheduling the Hearing.........................................................................................23

    Adjournments.........................................................................................................24

    Direct Communication............................................................................................24

    Decisions ...............................................................................................................24

Consider Using the Direct Communication Rule ...........................................................24

Additional Resource ......................................................................................................25

Part Five: Prehearing Conferences ..............................................................................26

The Initial Prehearing Conference.................................................................................26

Preparing for the Initial Prehearing Conference ...........................................................26

Conducting a Fair and Impartial Initial Prehearing Conference ....................................27

Copyright 2017 FINRA, Inc. All Rights Reserved.

Opting Out of the Initial Prehearing Conference ...................................................27

Other Prehearing Conferences ...................................................27

Make Preliminary Introductions ...................................................28

Address the Issues...................................................28

Make Rulings ...................................................28

Follow-Up ...................................................28

Additional Resource ...................................................29

Part Six: Discovery...................................................30

Discovery ...................................................30

Discovery Guide ...................................................30

Responding to Document Requests...................................................31

Ruling on Discovery ...................................................31

Production Orders That May Require Subpoenas...................................................32

Production Orders That Do Not Require Subpoenas ...................................................32

Depositions and Information Requests...................................................33

Confidentiality and Discovery ...................................................33

Product Cases...................................................34

Electronic Discovery...................................................37

Format of E-Discovery ...................................................37

Reasonably Usable Document Production...................................................39

Examples of Reasonably Usable Document Production ...................................................39

Factors to Consider When Resolving E-Discovery Disputes...................................................40

Document Sources and Search Terms ...................................................41

Modifications to Electronic Files ...........................................................................41

Discovery Sanctions.............................................................................................42

Additional Resources ...........................................................................................42

Part Seven: Motions.............................................................................................43

Panel's Authority to Rule on Motions...................................................................43

Types of Motions ..................................................................................................43

    Motion to Amend a Claim.................................................................................43

    Motion to Consolidate Claims ..........................................................................44

    Motion to Sever Claims ....................................................................................44

    Motion to Change the Hearing Location............................................................44

    Motion to Bar Defenses Due to Untimely or Incomplete Answers .....................45

    Motion to Compel Discovery ............................................................................45

    Motion to Postpone a Hearing..........................................................................45

    Motions to Dismiss...........................................................................................47

    Motion in Limine ..............................................................................................51

Additional Resources ...........................................................................................51

Part Eight: Before the Evidentiary Hearing...........................................................52

Preparing for the Evidentiary Hearing ..................................................................52

Offsite Hearing Locations Guidance......................................................................52

Part Nine: During the Evidentiary Hearing............................................................53

Before the Hearing Starts.....................................................................................53

    Parties ..............................................................................................................53

    Counsel.............................................................................................................53

Copyright 2017 FINRA, Inc. All Rights Reserved.

Witnesses ..............................................................................................................54

Starting the Hearing ...............................................................................................54

Hearing Decorum .............................................................................................55

Avoiding Ex Parte Communications ..................................................................55

Using the Hearing Script ..................................................................................56

Record of the Hearing ......................................................................................56

The Parties' Presentations ...............................................................................57

Admissibility of Evidence During the Party's Presentation ...............................58

Exclusion of Evidence During the Party's Presentation....................................58

Issuing Sanctions .............................................................................................59

Questions by Arbitrators and Factual Investigations ........................................60

Rulings Made During the Hearing ....................................................................60

Executive Sessions ..........................................................................................60

Concluding the Hearing: Ascertaining the Final Damage Requests..........................61

Exiting the Hearing Room .................................................................................61

Proper Disposal of Case-Related Materials .....................................................61

Hints for the Chairperson .........................................................................................62

Additional Resources ...............................................................................................62

Part Ten: After the Evidentiary Hearing....................................................................63

Deliberations ...........................................................................................................63

Rendering the Award.................................................................................................64

Form of the Award....................................................................................................64

Explained Decisions .................................................................................................65

Types of Remedies ............................................................................................65

    Actual Damages and/or Statutory Damages .......................................65

    Other Remedies..................................................................................66

    Requests to Include Interest as Part of the Award .............................67

    Requests to Include Punitive Damages as Part of the Award .............68

Awarding Sanctions, if Any.........................................................................68

Awarding Fees and Costs ...........................................................................69

    Forum Fees.........................................................................................69

    Attorneys' Fees ..................................................................................70

    Witness and Production Fees .............................................................70

    Other Case-Related Costs .................................................................70

    Member Surcharge and Process Fees................................................71

    Arbitration Award Offsets ...................................................................71

Expungement of Customer Dispute Information............................................71

    Central Registration Depository .........................................................71

    Reporting Requirements .....................................................................72

    Role of Arbitrators in Expungement Cases .........................................72

    Expungement Rules............................................................................73

    Settled Cases.....................................................................................74

    Expungement-Only Cases ..................................................................76

    BrokerCheck Report Review ..............................................................76

    Awards and Expungements ................................................................77

Expungement in Intra-Industry Disputes .....................................................78

Parties Making Second Requests for Expungement ....................................................78

Additional Resources ..............................................................................................78

Part Eleven: After the Case Closes..........................................................................79

Avoiding Party Contact.............................................................................................79

    Party Submissions to Arbitrators After a Case Closes .......................................79

Maintaining Confidentiality .......................................................................................79

    Arbitrator Immunity............................................................................................80

Evaluating Arbitrators ..............................................................................................80

Making Disciplinary Referrals ...................................................................................80

    Post-Case Referral............................................................................................80

    Mid-Case Referral .............................................................................................81

Motions to Vacate an Award .....................................................................................82

Part Twelve: Simplified Cases..................................................................................83

Frequently Asked Questions for Simplified Cases .....................................................83

Additional Resource ................................................................................................86

Copyright 2017 FINRA, Inc. All Rights Reserved.

# PART ONE: OVERVIEW

## About the Arbitration Process

> *"Equity is justice in that it goes beyond the written law. And it is equitable to prefer arbitration to the law court, for the arbitrator keeps equity in view, whereas the judge looks only to the law, and the reason why arbitrators were appointed was that equity might prevail."* —
>
> **Domke on Aristotle**

Arbitration is a method of resolving a dispute between two or more parties. Parties agree in advance to abide by the decision of the arbitrators, who are impartial persons committed to rendering a fair and impartial decision after all parties have had an opportunity to present their cases.

The arbitrators' award is final and binding, subject to court review only under limited circumstances. There is no appeal process within FINRA under the Code of Arbitration Procedure for Customer Disputes or the Code of Arbitration Procedure for Industry Disputes (collectively referred to as Codes or Code).[1] However, the parties may file a motion to vacate the arbitration award in a court of competent jurisdiction. In short, arbitration is a quick, fair, and relatively inexpensive alternative to litigation.

There has been a dramatic increase in the use of arbitration for all types of disputes since the late 1980s. A sharp increase in the number of securities arbitrations was influenced by a U.S. Supreme Court decision (*Shearson v. McMahon*, 1987) that helped establish arbitration as the predominant procedure for resolving securities disputes. Prior to this decision, the binding nature of the arbitration agreement and the broad scope of an arbitrator's authority in securities cases were less clear. Since arbitration is the primary means of resolving disputes in the securities industry, the public perception of its fairness is of paramount importance. Arbitrators appointed to resolve securities controversies must continue to meet the challenge of maintaining fair and orderly arbitration proceedings.

---

[1] Because many of the rules in the Code of Arbitration Procedure for Customer Disputes (Customer Code) and the Code of Arbitration Procedure for Industry Disputes (Industry Code) are identical, this Guide focuses primarily on the Customer Code (12000 series). Where there is a significant difference between the Customer Code and the Industry Code, the Guide will refer to the appropriate rule in the 13000 series of FINRA's Industry Code.

Copyright 2017 FINRA, Inc. All Rights Reserved.

## About FINRA

The Financial Industry Regulatory Authority (FINRA) is the largest independent regulator for all securities firms doing business in the United States. FINRA was created in July 2007 through the consolidation of NASD and the member regulation, enforcement and arbitration operations of the New York Stock Exchange. FINRA's mission is to protect America's investors by making sure the securities industry operates fairly and honestly.

FINRA touches virtually every aspect of the securities business—from registering and educating industry participants to examining securities firms; writing rules; enforcing those rules and the federal securities laws; informing and educating the investing public; providing trade reporting and other industry utilities; and administering the largest dispute resolution forum for investors and registered firms. FINRA also performs market regulation under contract for the major U.S. stock markets, including the New York Stock Exchange, NYSE Arca, NYSE Amex, The NASDAQ Stock Market and the International Securities Exchange.

## About FINRA Office of Dispute Resolution

FINRA Office of Dispute Resolution (FINRA) is the largest dispute resolution forum in the securities industry, handling most securities arbitrations and mediations in the United States. FINRA facilitates the efficient resolution of monetary, business and employment disputes among investors, securities firms and employees of securities firms.

FINRA is subject to Securities and Exchange Commission (SEC) oversight, and the SEC must approve FINRA's arbitration and mediation rules. In addition, the National Arbitration and Mediation Committee (NAMC) makes recommendations to FINRA regarding the conduct of arbitrations, mediations and other dispute resolution matters, including approving arbitrator and mediator candidates for the roster.[2]

### FINRA's Administrative Staff

FINRA assigns a Case Administrator to every case. Case Administrators are responsible for managing individual cases and ensuring that each aspect of the case is administered properly. To make sure that telephone inquiries are handled quickly, Information Specialists are available to answer procedural and case-specific questions on any case. Information Specialists can provide:

---

[2] The NAMC is an advisory committee on arbitration matters and includes representatives from the public, the securities industry and arbitrators and mediators serving in FINRA's dispute resolution forum. The majority of the NAMC's members, including its Chair, are public representatives. Under the Codes of Arbitration Procedure, the NAMC shall have the authority to recommend rules, regulations, procedures and amendments relating to arbitration, mediation, and other dispute resolution matters to the Board. The NAMC shall also establish and maintain rosters of neutrals composed of persons from within and outside of the securities industry.

Copyright 2017 FINRA, Inc. All Rights Reserved.

- dates and location of scheduled evidentiary hearings or telephonic hearings;
- contact information for Case Administrators or other staff;
- deadlines/due dates;
- the process for or status of scheduling, rescheduling and cancelling prehearing conferences; and
- clarification of correspondence received from FINRA.

FINRA also has a team of support staff to analyze and prepare claims for service; generate and send arbitrator lists to the parties and consolidate them when the parties return them; contact arbitrators to serve on cases; and schedule prehearing conferences and hearings.

Staff members are not advocates, nor do they conduct legal research or provide legal advice. Staff may only provide guidance on administrative procedures. When deciding a case, arbitrators should not seek or accept a staff member's opinion. Only the arbitrators may decide a case.

To contact any of our four regional offices, please review the directory. Staff may also be reached by email by using firstname.lastname@finra.org (for example: kelly.smith@finra.org).

## About FINRA Arbitrators

FINRA recruits, trains and manages a large roster of arbitrators and mediators. FINRA carefully selects arbitrators and mediators from a diverse cross-section of professionals. FINRA's neutrals are available to arbitrate and mediate cases in over 70 hearing locations in the United States, including at least one in each state, one in San Juan, Puerto Rico and one in London, UK. Statistics about arbitration and mediation, and information about arbitrators and mediators, are available on our website.

FINRA pledges to provide impartial, knowledgeable and courteous staff and highly trained arbitrators and mediators committed to delivering fair, expeditious and cost-effective dispute resolution services for investors, brokerage firms and their employees.

Finally, arbitrators are independent contractors, not employees of FINRA. Arbitrators are not eligible to receive any unemployment benefits or any FINRA employee benefits.

### Arbitrator Honorarium

Pursuant to FINRA Rule 12214, arbitrators are compensated at the rate of $300 per hearing session, with an additional $125 per day if acting as chairperson at a hearing on the merits. A hearing session is any meeting between the parties and arbitrators, including a prehearing conference with an arbitrator, that lasts four hours or less. In many instances, two hearing sessions will be held in a single day resulting in a $600 (panel member) or $725 (chairperson) honorarium. FINRA also provides arbitrators with

a $200 honorarium for deciding discovery motions on the papers, submitted by the parties, and a $250 honorarium for deciding a contested motion requesting the issuance of a subpoena without a hearing.

FINRA also provides that if one or more parties request a postponement or cancellation within 10 days before a scheduled hearing session and the arbitrators grant the request, the party or parties making the request will pay a late cancellation fee of $600 per-arbitrator. This cancellation fee is effective for arbitration cases filed on or after July 6, 2015. For cases filed prior to July 6, 2015, an arbitrator will receive $100 if a hearing is postponed or cancelled within three business days before a scheduled hearing session.

**FINRA's Guidelines on Reimbursement for Expenses**

FINRA has strict guidelines regarding reimbursement of arbitrators' expenses. Please carefully review the Guidelines for Arbitrator Reimbursement to comply with FINRA's expense reporting procedures. Please review the online training, Completing Your Arbitrator Expense Report for additional information.

**For faster, more convenient reimbursement of expenses and payment of honoraria, arbitrators may register for direct deposit into a checking account.**

# PART TWO: ARBITRATOR TRAINING

## Basic Arbitrator Training Program

After FINRA approves an arbitrator candidate's application, the candidate must successfully complete FINRA's Basic Arbitrator Training Program before becoming eligible to serve on arbitration cases.

FINRA's Basic Arbitrator Training Program consists of several parts: an Online Basic Arbitrator Training Course, an Online Expungement Training Course and a Live Video or Onsite Training Session.

A description of the program, details on how to register is available through the Required Basic Arbitrator Training page of our website.

## Advanced Arbitrator Training

In addition to the mandatory, basic arbitrator training program, FINRA offers subject-specific online training modules. Arbitrators who successfully complete FINRA's training courses will have this noted on their arbitrator Disclosure Reports. A description of each module, together with details on how to register and applicable costs (if any), are available through the Advanced Arbitrator Training page of our website.

## Continued, Mandatory Training

From time-to-time, FINRA creates subject-specific training on key issues in securities arbitration and requires every arbitrator on its roster to successfully complete the training. Arbitrators are given full notice of the training, and given sufficient time to fulfill the training requirement. Failure to complete a mandatory training requirement may result in removal from the roster.

# PART THREE: THE ARBITRATOR'S ROLE—ETHICAL CONSIDERATIONS, DUTY TO DISCLOSE, CHALLENGES AND DISQUALIFICATION

## The Arbitrator's Role: Ethical Considerations

FINRA encourages arbitrators to regularly review the Code of Ethics for Arbitrators in Commercial Disputes (Code of Ethics) to refresh themselves about their duties and ethical responsibilities. The information contained in this Guide is a brief reminder of the arbitrators' ethical duties; it is neither an exhaustive list nor a substitute for the Code of Ethics or the FINRA Codes. In addition to the Code of Ethics, arbitrators should also be mindful of any ethical considerations associated with their respective professions.

### Neutrality

Arbitrators must be impartial and neutral throughout a proceeding. Impartiality extends to parties, counsel, agents, witnesses, co-panelists and even the type of case involved. Arbitrators must be impartial in both appearance and in fact. Arbitrators are viewed by parties in an arbitration case much as a judge would be viewed in a court of law. In some ways, arbitrators have greater power than a judge (*e.g.*, except for limited reasons, arbitration awards cannot be overturned). Therefore, it is particularly important in arbitration that the forum be fair and be perceived to be fair.

### Avoiding Potential Conflicts

Upon accepting an appointment, arbitrators should avoid entering into any financial, business or other relationship that is likely to affect impartiality or might reasonably create an appearance of partiality or bias. For example, an arbitrator should not accept any engagement involving a party while an arbitration case is pending, nor do so for a reasonable period of time after the case concludes. Likewise, arbitrators should disclose previous cases for which they were retained that involved any party, counsel or witness in the current case.

### Ethical Reasons Not to Accept Appointment as an Arbitrator

If an arbitrator has any doubt about whether he or she can be fair or impartial, the arbitrator should decline the appointment. For example, an arbitrator should refuse an appointment if the arbitrator has firmly held beliefs about the issue in dispute or about a named party to the dispute.

A major goal of arbitration is the prompt resolution of disputes. Thus, in accordance with Canon I (b)(4) of the Code of Ethics, an arbitrator should accept appointment only if fully satisfied: "that he or she can be available to commence the arbitration in accordance with the requirements of the proceeding and thereafter to devote the time and attention to its completion that the parties are reasonably entitled to expect."

**Ethical Obligations Regarding [Information Security](#)**

Documents and information in FINRA's arbitration case files are confidential. Arbitrators have an ethical duty to keep confidential all information obtained in connection with an arbitration or mediation. Information that needs to be safeguarded includes, but is not limited to:

- Social Security numbers;
- individual taxpayer identification numbers;
- driver's license numbers;
- party and arbitrator addresses;
- brokerage, bank or other financial account numbers;
- criminal history information;
- fingerprint cards;
- expunged records;
- attorney-client communications; and
- medical records.

Arbitrators must exercise caution when using, transporting, storing and ultimately disposing of case materials. These actions must be handled in a manner that preserves the confidentiality of the information. Arbitrators can protect confidential information by taking the following precautions:

- Do not leave case-related material out in the open where others can see it. Arbitrators should secure case material in a locked drawer when they are not being used.

- Do not leave case-related material unattended in a car for an extended period. If you anticipate that you will be away from your car for more than a short time, you should take the materials with you. However, you may want to leave materials in your car trunk—and lock the doors and windows—if you know you will be away from your car briefly.

- Be cautious when reviewing case materials in public. Do not allow third parties to read the materials over your shoulder.

- Be aware of your surroundings when participating in prehearings or hearings by conference call to ensure that others cannot eavesdrop. This is particularly important if you are participating by cell phone in a public area (*i.e.*, a train, a courthouse corridor, etc.)

- Exercise extra caution when serving on multiple cases to avoid sending information about one case to parties in another case.

- Verify that the correct order and enclosures are being sent to the intended recipients; arbitrators should confirm all email addresses and fax numbers before

hitting the send button. The case number and case name should be specified when transmitting orders and rulings, even when transmitting them to FINRA.

- Keep FINRA apprised of current contact information. For example, if an arbitrator provides an incorrect fax number or neglects to update contact information, FINRA may inadvertently send confidential information to an unauthorized person. Arbitrators may update their contact information quickly and easily through FINRA's DR Portal;

- Do not use shared email accounts to receive or send case-related information. Only arbitrators assigned to the case should have access to case-related information. Individuals who are not involved with a particular matter are not authorized to view any correspondence or materials related to a FINRA arbitration case. Accordingly, no one other than the arbitrator should have access to the arbitrator's email account containing such information.

- Any time the hearing room is not occupied it should be locked and/or secured. Thus, hearing rooms should be locked or secured during a short term recess, lunch breaks and of course overnight.

- Do not dispose of case materials in a regular trash receptacle. Arbitrators should shred all case-related documents. If arbitrators are unable to shred documents in their possession, they may return them to FINRA for proper disposal.

- Consider leaving behind case materials at the conclusion of a hearing **only** if the hearing is held at a FINRA office or in a Regus meeting room. When leaving materials behind, clearly mark them to be shredded. For hearings that take place at a Regus meeting room, arbitrators should alert the Regus onsite representative that documents remain in the room that are marked to be shredded. Regus will bill FINRA directly to shred the arbitrators' documents. Arbitrators should not expense these costs.

- Encourage the parties to take their respective materials with them for hearings in all other locations. Likewise, arbitrators should take their copies of the case materials with them when they leave and either shred them at home or return them to FINRA for proper disposal.

If arbitrators believe that the confidentiality of sensitive information has been compromised or have any questions about safeguarding case-related material, they should contact their case administrator immediately. For more information, listen to the July 21, 2010 neutral workshop on Information Security.

# The Arbitrator's Role: Duty to Disclose

Arbitrators must be impartial in both appearance and in fact. For this reason, arbitrators submit detailed biographical information at the time they submit an application to join FINRA's arbitrator roster. The information collected from the application is compiled to create an Arbitrator Disclosure Report (Disclosure Report). During the list selection process, the parties are given the opportunity to review the Disclosure Report of the arbitrators randomly listed for potential service. The Disclosure Report lists previous FINRA awards rendered by the arbitrator, and also lists the current cases to which the arbitrator is assigned. For your convenience, you may review a Sample Disclosure Report.

In order to ensure that the arbitrators' Disclosure Reports are accurate and up-to-date, FINRA will send the arbitrators their Disclosure Report each time the arbitrator is appointed to a case. **It is extremely important that arbitrators update their Disclosure Reports frequently.**

Arbitrators are strongly encouraged to update their Disclosure Reports online using the FINRA DR Portal. If you have already registered with the portal, please go to the DR Portal Web page and log in to make updates to your profile. If you have not registered and would like to receive a registration invitation, please send an email to Dispute Resolution Neutral Management to request an invitation. Please include "request portal invitation" in the subject line. You must use your unique invitation to register with the portal.

Arbitrator disclosure is the cornerstone of FINRA arbitration, and the arbitrator's duty to disclose is continuous and imperative. Disclosure includes any relationship, experience and background information that may affect—or even appear to affect—the arbitrator's ability to be impartial and the parties' belief that the arbitrator will be able to render a fair decision. When making disclosures, arbitrators should consider all aspects of their professional and personal lives and disclose all ties between the arbitrator, the parties and the matter in dispute, no matter how remote they may seem. This includes, but is not limited to, lawsuits (even non-investment related lawsuits); any publications (even if they appear only online); professional memberships; service on boards of directors; etc. If you need to think about whether a disclosure is appropriate, then it is: **make the disclosure**. Failure to disclose may result in vacated awards which undermine the efficiency and finality of our process. Failure to disclose may also result in removal from the roster.

FINRA Rule 12405 requires arbitrators to disclose any direct or indirect financial or personal interest in the outcome of the arbitration, as well as any existing or past, direct or indirect, financial, business, professional, family, social or other relationships with any of the parties, representatives, witnesses or co-panelists. **The duty to disclose is ongoing.** Therefore, arbitrators are also required to continually make reasonable efforts to inform themselves of relationships and interests including changes in their or their

Copyright 2017 FINRA, Inc. All Rights Reserved.

immediate family member's[3] employment, job functions or clients since these facts can result in a change to their classification as a public or non-public arbitrator.

## Disclosures Upon Appointment to Serve

It is important that arbitrators ensure that they have no conflicts when they accept appointment to a case. Accordingly, when FINRA contacts arbitrators about possible case service, staff will disclose the following information about the case:

- names of the parties;
- names of current lawyers or agents representing the parties; and
- the nature of the case.

If an arbitrator determines that a potential conflict exists after learning the above information, the arbitrator must advise staff immediately. Arbitrators should disclose any circumstance that might hinder—or even appear to hinder—their ability to render an objective determination.

## Disclosures After Appointment to Serve

Once an arbitrator accepts an appointment, FINRA sends the arbitrator the Oath of Arbitrator (Oath), which includes the Arbitrator Disclosure Checklist (Checklist). These documents are forwarded to the arbitrator with the case packet materials, which contain—in part—the pleadings, the arbitrator disclosures, and the hearing scripts (for a single arbitrator case or a three-member panel case). Arbitrators should review carefully the pleadings, the witness lists and their co-panelists' Disclosure Reports followed by another thorough conflicts check. Only after these documents have been examined, the Checklist has been reviewed, and another conflicts check has been completed should the arbitrator sign the Oath and return it to FINRA staff. This process is repeated for every case to which the arbitrator is appointed.

## Disclosures at Hearings

Arbitrators must repeat their disclosures on the record at the start of the Initial Prehearing Conference, and at the beginning of the hearing on the merits. The parties should acknowledge the information and state whether they have an objection to proceeding with the appointed arbitrators.

## Disclosures in General

Not every disclosure results in the arbitrator being removed from service on a case. When an arbitrator makes a disclosure, FINRA staff informs the parties of the facts disclosed by the arbitrator, and the parties decide whether to keep or replace the

---

[3] The term "immediate family member" is defined as: (i) a person's parent, stepparent, child or stepchild; (ii) a member of a person's household; (iii) an individual to whom a person provides financial support of more than 50 percent of the individual's annual income; or, (iv) a person who is claimed as a dependent for federal income tax purposes.

Copyright 2017 FINRA, Inc. All Rights Reserved.

arbitrator. As a rule, **when in doubt, always err in favor of making a disclosure.** Arbitrators are deciding issues of great importance to the parties involved. Therefore, it is important that the parties believe that the arbitrators rendered a fair decision.

# The Arbitrator's Role: Challenges and Disqualification

Parties are permitted to challenge the appointment of an arbitrator to their case. Parties may challenge the arbitrator directly by filing a Motion to Recuse. Alternatively, a party's challenge may be made directly to FINRA in the form of a Challenge for Cause or by filing a Director's Authority to Remove request. Each method is addressed separately below.

### Motions to Recuse

In the event that all parties ask an arbitrator to recuse (*i.e.*, "withdraw") from the panel, the arbitrator should honor the request and recuse. Recusal under these circumstances is required under the Code of Ethics.

If fewer than all parties request that an arbitrator recuse him or herself from the panel, an arbitrator should do so unless, after carefully considering the matter, the arbitrator determines that the reason for the challenge is not substantial, and the arbitrator can nevertheless act and decide the case impartially and fairly. FINRA Rule 12406 provides that requests for arbitrator recusal are decided by the arbitrator who is the subject of the request.

Arbitrators should not feel offended if they are asked to recuse themselves from a case since such requests are generally not based on the ability or competence of an arbitrator.

In some instances, an arbitrator may voluntarily choose to withdraw from a case. When in doubt, arbitrators should consult with FINRA staff. Even if the case has already proceeded, it may be less expensive for the parties if an arbitrator steps down in the middle of the proceeding than for the parties to complete the proceeding and file a motion to vacate the award. However, whether arbitrators choose to step down should be balanced by the significance of the disclosure, the disclosed relationships and the prejudice to the parties.

Copyright 2017 FINRA, Inc. All Rights Reserved.

**Challenges for Cause Before the First Hearing Session Begins**

In accordance with FINRA Rule 12407(a), a party may file a challenge for cause to remove an arbitrator from the case before the first hearing session begins. Once a party files a challenge for cause, all opposing parties are entitled to submit a response. FINRA staff, on behalf of the Director of Arbitration, will review the challenge for cause and responses filed, if any, to determine whether to remove the arbitrator.

The rule provides that a challenge for cause to remove an arbitrator will be granted where it is reasonable to infer, based on information known at the time of the request, that the arbitrator is biased, lacks impartiality or has a direct or indirect interest in the outcome of the arbitration. The interest or bias must be direct, definite and capable of reasonable demonstration, rather than remote or speculative. Close questions regarding challenges to an arbitrator by a customer will be resolved in favor of the customer.

The following list, though not exhaustive, shows examples of circumstances where a challenge for cause would likely be granted. Generally, absent good cause, a party's ability to challenge an arbitrator(s) may be deemed waived if the challenge is not timely filed after a new disclosure is discovered by a party.

### Opinion and Bias

- Arbitrator has a firm opinion or belief as to the subject of a case for which he or she is an arbitrator.
- Arbitrator has a personal bias toward a party or party representative.

### Personal Relationships

- Arbitrator is or was related by blood or marriage to a party, its attorneys or witnesses.
- Arbitrator is or was a party's guardian.

### Business Relationships

- Arbitrator is or was a business partner, vendor, customer or client of a party.
- Arbitrator is a surety or guarantor of the obligations of a party.
- Arbitrator is currently a creditor or shareholder of any corporate party, or has any business relationship with a party.
- Arbitrator is or was a conservator or conservatee, employer or employee, principal or agent, or debtor or creditor of either a party or an officer of a corporation which is a party.
- Arbitrator is the parent, spouse or child of a person who is or was a conservator or conservatee, employer or employee, principal or agent, or debtor or creditor of either a party or an officer of a corporation which is a party.

**Current Involvement**

- Arbitrator is adverse to a party, its attorneys or witnesses.
- Arbitrator is a party to or the subject of a complaint, arbitration or litigation involving a securities investment.
- Arbitrator is currently an expert witness for a party.

**Previous Involvement**

- A party, its attorneys or witnesses previously accused an arbitrator of wrongdoing in a prior action.
- A party, its attorneys, or witnesses filed a motion to vacate challenging an award in a case in which the arbitrator had participated and signed the award.
- Arbitrator issued a complaint against a party, its attorneys or witnesses, in an action instituted or resolved during the past five (5) years.
- Arbitrator or any member, shareholder or associate of, or of counsel to his or her law firm, has had an attorney/client relationship with a party within three (3) years of the filing of the arbitration claim.
- Arbitrator or any member, shareholder or associate of, or of counsel to his or her law firm, has had an attorney/client relationship adverse to a party within three (3) years of the filing of the arbitration claim.

**Financial Interest**

- Arbitrator knows that he or she has, individually or as a fiduciary, a financial interest in the subject matter in controversy or in a party in the arbitration proceeding, or any other interest that could be substantially affected by the outcome of the arbitration proceeding.
- Arbitrator's immediate family member (as defined in Rule 12100) has a financial interest in the subject matter in controversy or in a party in the arbitration proceeding, or any other interest that could be substantially affected by the outcome of the arbitration proceeding.

**Expert Witnesses**

- An arbitrator in this matter testified as an expert witness against a party during the past (5) years.
- An arbitrator in this matter testified as an expert witness for a party during the past (5) years.
- An arbitrator in this matter was retained as an expert witness (but did not testify) in an action involving a party during the past three (3) years.
- An arbitrator in this matter was retained as an expert witness by a party's counsel, or his or her law firm, in an action during the past three (3) years (where no party in this matter was involved in the earlier action).

Copyright 2017 FINRA, Inc. All Rights Reserved.

**Director's Authority to Remove an Arbitrator After the First Hearing Session Begins**

According to FINRA Rule 12407(b), after the first hearing session begins the Director may remove an arbitrator based only on information required to be disclosed that was not previously known by the parties. The limitation on disclosing information not previously known to the parties prevents parties from raising challenges late in the process that should have been raised at the outset.

## Additional Resources

Arbitrator Disqualification Criteria
Top 10 Ways to Be a Better Arbitrator
Neutral Workshop: FINRA's Information Security Policy
Notice to Parties: Help FINRA Protect Your Personal Confidential Information
Your Duty to Disclose online training
*The Neutral Corner*, Volume 4—2011

# PART FOUR: BEFORE THE PROCEEDINGS BEGIN

## Determine Whether There Is a Senior or Seriously Ill Party Involved

FINRA recognizes that various state statutes provide for speedy trials in civil actions involving senior or seriously ill parties. FINRA appreciates the need for expedited hearings in arbitrations involving such parties. Since FINRA staff cannot shorten the time requirements set forth in the Codes, upon request, staff will expedite the administration of arbitration proceedings in matters involving senior or seriously ill parties.

Parties are eligible to participate in the program if they are at least 65 years old or have a serious health condition. In such situations, staff will begin the arbitrator selection process, schedule the Initial Prehearing Conference and serve the final award as quickly as possible. By mutual agreement, parties are also free to reduce the time requirements contained in the Codes. Staff will also determine promptly whether the parties are interested in mediation.

FINRA expects its arbitrators to be sensitive to the needs of senior or seriously ill parties when scheduling hearing dates, resolving discovery disputes and determining the reasonableness of postponements. At the Initial Prehearing Conference, counsel for a senior or seriously ill party should advise the arbitration panel of the party's desire for expedited hearings. When such a request is made, the arbitration panel is expected to schedule hearing dates and discovery deadlines that will expedite the process, yet still provide a fair amount of time for case preparation.

FINRA asks that arbitrators make every effort to expedite these cases particularly in the areas described below:

### Discovery Deadlines

Arbitrators should take all steps within their authority to help expedite the exchange of documents and the identification of witnesses. During the IPHC, the panel should establish a discovery cut off as close to the IPHC date as possible. FINRA also recommends that the panel set the deadline for the filing of discovery motions no more than three months after the IPHC date.

### Scheduling the Hearing

Arbitrators should schedule dates that will expedite the process but still provide a reasonable amount of time for case preparation. FINRA encourages parties and arbitrators to schedule the hearing within six months from the date of the IPHC. FINRA also recommends setting aside extra dates to avoid delay in the arbitration process.

Copyright 2017 FINRA, Inc. All Rights Reserved.

**Adjournments**

When deciding adjournment requests, arbitrators should be mindful of the age and health of parties or key witnesses. In addition, arbitrators are expected to avoid causing postponements absent a genuine emergency.

**Direct Communication**

FINRA asks the parties and arbitrators to consider agreeing to direct communication in this matter if all parties are represented by counsel.

**Decisions**

Arbitrators should return orders and decisions to FINRA as soon as possible, preferably by email or through the portal (on DR Portal cases). To facilitate prompt return, arbitrators can sign orders and awards electronically.

FINRA intends for these measures to improve the arbitration process for disputes involving senior or seriously ill parties, while maintaining procedural balance and fairness for all involved parties.

## Consider Using the Direct Communication Rule

In order to expedite the arbitration proceedings, FINRA rules permit direct communication between the parties and the arbitrators. Specifically, FINRA Rule 12211 permits parties and arbitrators to communicate directly, without FINRA staff intervening, provided certain requirements are met. According to the rules, only parties that are represented by counsel may use direct communication. If, during the proceeding, a party chooses to appear without counsel (pro se), the rule no longer applies. All arbitrators and all parties must agree to the use of direct communication. The arbitrators will determine the scope of direct communication and will memorialize the participants' agreement in an order. Parties may send the arbitrators only the types of items that are listed in the order. All the arbitrators and parties must have facsimile or email capability before such a delivery method may be used.

Materials must be sent at the same time and in the same manner to all parties, all arbitrators and FINRA staff, and staff must receive copies of any orders and decisions made as a result of direct communications among the parties and the arbitrators. The rule states that materials more than 15 pages long shall be sent to FINRA staff only by mail or courier. Arbitrators could include a similar provision as to themselves in the direct communication order.

Generally, the decision to use direct communication will be made at the Initial Prehearing Conference; however, parties and arbitrators also may agree to use direct communication later in the course of an arbitration proceeding, so long as the agreement is contained in a written order of the arbitrators. The rule provides that either

Copyright 2017 FINRA, Inc. All Rights Reserved.

an arbitrator or a party may rescind his or her agreement to use direct communication at any time, with notice to all arbitrators and parties.

## Additional Resource

Direct Communication Rule online training

# PART FIVE: PREHEARING CONFERENCES

## The Initial Prehearing Conference

To maximize the efficient administration of a case by the panel, FINRA will schedule an Initial Prehearing Conference (IPHC). The IPHC will generally be held by telephone. Pursuant to FINRA Rule 12500(b), FINRA will notify the parties and arbitrators of the date and time of the IPHC at least 20 days prior to the conference.

At the IPHC, the panel will schedule evidentiary hearing dates; set discovery, briefing, and motions deadlines; and, address other preliminary matters. Additionally, the panel should confirm that the respondents submitted signed Submission Agreements. The panel should advise the parties that if any respondents have not filed a signed Submission Agreement, or otherwise objected to jurisdiction, then they must do so within 30 days or they may be subject to sanctions.

Expeditious resolution of disputes is one of the goals of arbitration. Therefore, the commencement of evidentiary hearings within nine months or less after the IPHC is the goal of FINRA and the arbitrators. There may be times when this is not feasible; however, the commencement of hearings more than nine months after this conference should be the exception.

## Preparing for the Initial Prehearing Conference

Proper preparation requires that arbitrators review all filed claims, answers, specific motions and responsive papers prior to the IPHC. Arbitrators should also review the Codes of Arbitration Procedure and FINRA procedural guidelines, such as the FINRA Discovery Guide for customer cases, the Initial Prehearing Conference Script (IPHC Script), and the IPHC Scheduling Order **before** the IPHC. These documents are included in the case packet. If arbitrators do not receive the documents described here, they should immediately ask the assigned staff to provide them.

When preparing for the IPHC, arbitrators should:

- Remember to alert FINRA of any changes to their contact phone numbers at least 24 business hours before the scheduled IPHC.
- Understand that FINRA's telecommunications provider will call all arbitrators and party representatives for the conference call. Arbitrators should be available at least 5 minutes prior to the scheduled time for the conference call.
- Be aware that a FINRA staff member may or may not participate in the call. Arbitrators should contact FINRA **prior** to the commencement of the call if they have any questions about the call.

## Conducting a Fair and Impartial Initial Prehearing Conference

FINRA designed the IPHC Script to facilitate a fair hearing process. Arbitrators should use the script to the greatest extent possible to ensure that all necessary procedures are followed. The chairperson should follow the IPHC Script and be sure to:

- identify the participants (parties, attorneys, other individuals listening to the call);
- ask the participants to identify themselves each time before they speak;
- read the case name and number;
- state that the panel is a body of neutral arbitrators who are not employees of FINRA; and
- ask the parties to confirm that they accept the panel.

At the conclusion of the IPHC, the chairperson should sign the IPHC Scheduling Order on behalf of the panel and submit it to the assigned FINRA staff member for distribution to the parties.

### Opting Out of the Initial Prehearing Conference

In some cases, the parties may wish to opt out of the IPHC. FINRA Rule 12500(c) permits the parties to forgo the IPHC if they jointly provide the Director with the following information:

- a statement that the parties accept the panel;
- a statement concerning whether any other prehearing conferences will be held and if so, for each prehearing conference, a minimum of four mutually agreeable dates and times, and whether the chairperson or the full panel will preside;
- a minimum of four sets of mutually agreeable regular hearing dates;
- a discovery schedule;
- a list of all anticipated motions, with filing, response and reply due dates; and
- a determination of whether briefs will be submitted and if so, the due dates for the briefs and any reply briefs.

## Other Prehearing Conferences

After the IPHC, the panel may need to convene additional telephonic prehearing conferences with the parties to resolve issues or disputes. These additional conferences may occur before the evidentiary hearings begin or even after the hearings have commenced.

Prior to a prehearing conference, FINRA will provide arbitrators with any written submissions pertaining to the issues or disputes to be addressed at the conference. Arbitrators should be familiar with all submissions before the prehearing conference begins. Arbitrators presiding at prehearing conferences should always give

Copyright 2017 FINRA, Inc. All Rights Reserved.

consideration to the oral arguments set forth by parties, as well as the documentary information provided prior to the conference.

At the conference, the chairperson should follow these procedures:

**Make Preliminary Introductions**

- Identify the participants (parties, attorneys, other individuals listening to the call);
- Ask the participants to identify themselves each time before they speak;
- Read the case name and number; and
- State that the panel is a body of neutral arbitrators who are not employees of FINRA.

**Address the Issues**

- Ask the party requesting the prehearing conference to explain the issue;
- Ask for the positions of the other party or parties, giving the moving party an opportunity to respond;
- Ask questions—as necessary—to identify and clarify the issues; and
- Provide all parties with an opportunity to respond.

**Make Rulings**

- If the prehearing conference involves discovery issues, be specific and provide a reasonable timetable for compliance, including dates and places for the exchange of information or documents;
- Reread and confirm the panel's ruling with the parties (make sure all parties understand it fully);
- Be polite, but firm when delivering your order. Do not allow the parties to debate an issue once you have ruled.
- Document the panel's ruling in a prehearing order (the panel may request parties' counsel to submit a draft order for adoption or modification);
- Inform the parties of the maximum fee that the panel can assess for each prehearing session;
- Ask whether there are any other issues prior to concluding the prehearing; and
- If arbitrators want to confer privately—either during the conference or after the parties have finished their presentations—make sure all the parties are off the phone before discussing the issues. Verify with the conference operator that only the arbitrators are connected to the call.

**Follow-Up**

- Send a copy of the written order, preferably typed, to the assigned FINRA staff person by fax or email for distribution to the parties.

## Additional Resource

[Understanding the Prehearing Conference Stage: Initial Prehearing Conference](#) online training

Copyright 2017 FINRA, Inc. All Rights Reserved.

# PART SIX: DISCOVERY

Though issues concerning discovery and motions can occur at any time during an arbitration proceeding, arbitrators most often face these challenges between the IPHC and the first evidentiary hearing. Given the important and often complicated nature of these issues, Parts Six and Seven of this Guide are devoted exclusively to addressing those issues.

## Discovery

Discovery is the exchange of documents and information that the parties undertake to prepare for the hearing on the merits. FINRA requires parties to cooperate to the fullest extent practicable in the exchange of documents and information to expedite the arbitration. The Codes provide procedures for discovery requests and outline the arbitrators' authority in the discovery process.

## Discovery Guide

For customer disputes only, FINRA provides the Discovery Guide, which documents that the parties should exchange without arbitrator or staff intervention. The Discovery Guide contains two Document Production Lists (Lists) of presumptively discoverable documents: one for firms/associated persons to produce and one for customers to produce. Though the Discovery Guide is not intended for use in simplified arbitration proceedings under FINRA Rule 12800, the arbitrators may, in their discretion, choose to use relevant portions of the Discovery Guide in a manner consistent with the expedited nature of simplified proceedings.

The Discovery Guide, including the Lists, serves as a guide for the parties and the arbitrators. While the parties and arbitrators should consider the documents described in the Lists presumptively discoverable, the parties and arbitrators retain their flexibility in the discovery process. Arbitrators can: order the production of documents not provided on the Lists; order that the parties do not have to produce certain documents on the Lists in a particular case; and alter the production schedule described in the 12500 series of rules. Where additional documents are relevant in a particular case, parties can seek them in accordance with the time frames provided in the Code.

Nothing in the Discovery Guide precludes the parties from voluntarily agreeing to an exchange of documents in a manner different from that set forth in the Discovery Guide. FINRA encourages the parties to agree to the voluntary exchange of documents and to stipulate to various matters.

## Responding to Document Requests

Under Rule 12506. unless the parties agree otherwise, within 60 days of the date that the answer to the statement of claim is due, parties must either produce, identify and explain the reason that specific documents on the Lists cannot be produced or object to production. For all other discovery requests under Rule 12507, parties must respond within 60 days from the date a discovery request is received.

A party must use its best efforts to produce all documents required or agreed to be produced. If a party responds that there are no responsive documents in the party's possession, custody or control, the customer or the appropriate person in the brokerage firm who has knowledge, upon the request of the party seeking the documents, must: 1) state in writing that the party conducted a good faith search for the requested documents; 2) describe the extent of the search; and 3) state that, based on the search, there are no requested documents in the party's possession, custody or control.

## Ruling on Discovery

Under FINRA Rule 12508, a party may object to the production of any document or information. (If a party objects to discovery on the grounds of confidentiality, see the "Confidentiality and Discovery" section of this Guide.) If any party objects to the production of any document or information, and the parties cannot resolve this objection, the party may file an objection, which specifically identifies the document or requested information it is objecting to and why. Objections must be in writing, and must be served on all other parties at the same time and in the same manner. The matter will be sent to the chairperson who will make a ruling. The chairperson is authorized to act on behalf of the entire panel in issuing subpoenas, directing appearances, ordering the production of documents and information, setting deadlines and issuing any other order that may serve to expedite the process and permit any party to develop its case fully.

In making any rulings on objections, the chairperson may consider the relevance of documents or discovery requests and the relevant costs and burdens to parties to produce this information. Some chairpersons may prefer to make these decisions with the benefit of the expertise of their colleagues and request that the full panel be convened to decide the issue.

Arbitrators should, to the fullest extent possible, encourage parties to:

- enter into stipulations;
- agree to the joint submission of pre-marked exhibits; and
- narrow the issues in dispute.

In addition, arbitrators should consider whether briefs or legal memoranda on an issue are desirable and, if so, establish a schedule for their submission. Arbitrators should set

deadlines and issue orders that will expedite the discovery process and permit a party to develop its case fully.

## Production Orders That May Require Subpoenas

FINRA Rule 12512 provides that only arbitrators may issue subpoenas in FINRA's forum directing the appearance of a witness and/or the production of documents not covered in FINRA Rule 12513.

Parties must submit to FINRA a written motion requesting a subpoena and a draft subpoena. All opposing parties have an opportunity to submit written objections to a subpoena request. FINRA Rule 12512(c) provides that if a party receiving a motion and draft subpoena objects to the scope or propriety of the subpoena, that party shall, within 10 calendar days of service of the motion, file written objections with FINRA staff, with an additional copy for the arbitrator, and shall serve copies on all other parties at the same time and in the same manner. The party that requested the subpoena may respond to the objections within 10 calendar days of receipt of the objections. FINRA will send to the arbitrator the subpoena and any other relevant materials. Arbitrators should read all the materials supplied as well as the pleadings in the case before executing the subpoena.

Only after determining the relevancy of the documents requested, should arbitrators consider the parties' costs, and by whom such costs will be borne.

If an arbitrator issues a subpoena, the party that requested the subpoena must serve the subpoena at the same time and in the same manner on all parties and on the subpoenaed party.

## Production Orders That Do Not Require Subpoenas

FINRA Rule 12513 provides that upon motion of a party, arbitrators may order the following without the use of subpoenas:

- the appearance of any employee or associated person of a firm; or
- the production of any documents in the possession or control of such persons or firms.

In most instances, arbitrators should issue orders, instead of issuing subpoenas, when industry parties seek the appearance of witnesses or the production of documents from non-party firms or their employees or associated persons.

Under FINRA Rule 12513, unless arbitrators direct otherwise, the party requesting the appearance of witnesses by, or the production of documents from, non-parties shall pay the reasonable costs of the appearance and/or production.

Copyright 2017 FINRA, Inc. All Rights Reserved.

## Depositions and Information Requests

Depositions are strongly discouraged in arbitration, pursuant to [FINRA Rule 12510](#). However, under Rule 12510, upon motion of a party, arbitrators may permit depositions, but only under very limited circumstances, including:
- to preserve the testimony of ill or dying witnesses;
- to accommodate essential witnesses who are unable or unwilling to travel long distances for a hearing and may not otherwise be required to participate in the hearing;
- to expedite large or complex cases; and
- if the panel determines that extraordinary circumstances exist.

Information requests are a form of interrogatory, but are more limited in scope, number and specificity. In general, requests for information assist the discovery process. Proper requests for information may include the following:

- Who was the branch manager?
- Was the current compliance manual in effect during the period in question?
- Who were the individuals that supervised the broker?

Questions that ask for opinions or conclusions, rather than seek information on facts or events, may be improper. For example, a question asked of a witness such as, "What is your understanding of this document?" should generally be left for the hearing. Limiting the scope of requests for documents and information to the facts of a case keeps the discovery process moving.

## Confidentiality and Discovery

If a party objects to document production on grounds of privacy or confidentiality, arbitrators or one of the parties may suggest a stipulation between the parties that the documents in question will not be disclosed or used in any manner outside of the arbitration of the particular case, or the arbitrators may issue a confidentiality order. Arbitrators may also want to consider ordering the redaction (removal) of names or other information, or having the parties sign confidentiality agreements.

Ideally, the parties will agree on the form and content of a confidentiality order. In some instances, however, the parties will not agree on what is or is not confidential. When deciding contested requests for confidentiality orders, arbitrators should consider competing interests of the parties. The party asserting or requesting confidentiality has the burden of establishing that the documents or information in question are entitled to confidential treatment. Arbitrators should not automatically designate all documents as confidential.

When the party requesting confidentiality has met the burden of establishing the need for confidentiality of certain documents or information, arbitrators should strive to accomplish the confidentiality sought in the least restrictive manner possible. In considering questions about confidentiality, arbitrators may consider the following factors:

- Whether the disclosure would constitute an unwarranted invasion of personal privacy (*e.g.*, an individual's Social Security number, or medical information).
- Whether there is a threat of harm attendant to disclosure of the information.
- Whether the information contains proprietary confidential business plans and procedures or trade secrets.
- Whether the information has previously been published or produced without confidentiality or is already in the public domain.
- Whether an excessively broad confidentiality order could be against the public interest or could otherwise impede the interests of justice.
- Whether there are legal or ethical issues which might be raised by excessive restrictions on the parties.

Arbitrators shall not issue an order or use a confidentiality agreement to require parties to produce documents otherwise subject to an established privilege, including the attorney-client privilege and the attorney work product doctrine.

Concerns about confidentiality and privilege might also be raised regarding subpoenas issued to non-parties. Pursuant to Rule 12512, a non-party may file an objection to a subpoena served upon the non-party. The arbitrator may set up a conference call with a non-party and the parties to discuss the non-party's objection to the subpoena. Staff advises the non-party and the parties of the arbitrator's decision. Non-parties also may ask the arbitrators to resolve questions concerning who pays the costs incurred as a result of producing subpoenaed documents.

## Product Cases

Product cases are cases in which one or more of the asserted claims center around allegations regarding the widespread mismarketing or defective development of a specific security or specific group of securities. For example, many investors who purchased bond funds heavily invested in subprime debt filed suitability claims after these funds declined greatly in value after the collapse of the subprime market in 2008-2009.

Product cases are different from other customer cases in several ways, such as:

1. The volume of documents tends to be much greater.
2. Multiple investor claimants may seek the same documents.
3. The documents are not client specific.

Copyright 2017 FINRA, Inc. All Rights Reserved.

4. The product at issue is more likely to be the subject of a regulatory investigation.
5. The cases are more likely to involve a class action with documents subject to a mandatory hold.
6. The same documents may have been produced to multiple parties in other cases involving the same security or to regulators.
7. Documents are more likely to relate to due diligence analyses performed by persons who did not handle the claimant's account.

Parties do not always agree on whether a claim centers around a product as defined above and may ask the arbitrators to make that determination. The arbitrators may ask the parties to explain their rationale for asserting that a claim is, or is not, a product case. In addition, since product cases are different from other customer cases, arbitrators may encounter certain discovery-related issues that differ from those they have seen in other arbitrations.

The Discovery Guide's Document Production Lists may not provide all of the documents parties usually request in a product case. In a product case, parties typically request documents relating to, among other things, a firm's: creation of a product; due diligence reviews of a product; training or marketing of a product; or post-approval review of a product. Parties may ask the arbitrators to resolve disputes concerning which additional documents they must produce and the scope of the additional documents. Pursuant to the Discovery Guide, parties are not limited to the documents enumerated in the Document Production Lists. Where additional documents may be relevant in a particular case, parties can seek them in accordance with the time frames provided in the 12500 series of rules in the Customer Code. It is possible that the producing party may object to the production on a variety of grounds.

For example, discovery in product cases is document intensive and therefore can become costly. Parties potentially may raise issues of cost and burden in this regard. If a party demonstrates that the cost or burden of production is disproportionate to the need for the documents, the Discovery Guide provides that the arbitrators should determine if the documents are relevant or likely to lead to relevant evidence. If the arbitrators determine that the documents are relevant or likely to lead to relevant evidence, they should consider whether there are alternatives that can lessen the impact, such as narrowing the time frame or scope of an item, or determining whether another document or documents can provide the same information. The arbitrator can also refer any unresolved discovery issue to the full panel for a determination.

When considering discovery issues in product cases, it is possible that parties will make the arbitrators aware that other panels have considered and decided similar disputes. Arbitrators should be aware that prior arbitration decisions are not binding on other panels.

Parties sometimes argue that documents they are requesting were produced in another customer case or pursuant to a regulatory inquiry and, therefore, the arbitrators should

order their opponent to produce the documents in their case. In this situation, the panel should consider the context of production in the other case or inquiry when deciding whether to order production in the case currently before the panel. If the prior production was to a regulatory authority, parties preserve the right to make whatever objections they deem appropriate, for example, that documents produced to regulators contain customer information that is proprietary, confidential and/or subject to privacy rights. Arbitrators should balance any arguments about the burden of reviewing and removing confidential material with the customer's need for the documents. The arbitrators may ask the parties to brief them on the law relating to production issues.

If a party objects to document production on grounds of privacy or confidentiality, the arbitrators or one of the parties may suggest a stipulation between the parties that the documents in question will not be disclosed or used in any manner outside of the arbitration of the particular case, or the arbitrators may issue a confidentiality order. When deciding contested requests for confidentiality orders, arbitrators should consider the competing interests of the parties. The party asserting confidentiality has the burden of establishing that the documents in question require confidential treatment. In deciding questions about confidentiality, arbitrators should, taking into account the facts of a particular case, consider factors such as the following:

1. Whether the disclosure would constitute an unwarranted invasion of personal privacy (e.g., an individual's Social Security number, or medical information).
2. Whether there is a threat of harm attendant to disclosure of the information.
3. Whether the information contains proprietary confidential business plans and procedures or trade secrets.
4. Whether the information has previously been published or produced without confidentiality or is already in the public domain.
5. Whether an excessively broad confidentiality order could be against the public interest or could otherwise impede the interests of justice.
6. Whether there are legal or ethical issues which might be raised by excessive restrictions on the parties.

In product cases, the issue of unequal production may arise. Due to the nature of these claims, broker-dealers will generally have significantly more potential documents to produce compared to customers. Again, when determining whether to order production, arbitrators should determine if the documents are relevant or likely to lead to relevant evidence as described above.

FINRA encourages the parties to agree to the voluntary exchange of documents and information and to stipulate to various matters. As product cases are typically document intensive cases, arbitrators should encourage parties to discuss a discovery plan early on in the arbitration. When addressing parties' disputes over discovery, arbitrators should focus on narrowing requests and objections.

# Electronic Discovery

The Discovery Guide provides that electronic files, such as emails and word processed memoranda, are documents within the meaning of the Discovery Guide. This means that parties are required to produce electronic files if they are responsive to an item on the Document Production Lists. While the Codes of Arbitration Procedure require parties to cooperate with each other during the discovery phase of a case, discovery disputes, including electronic discovery (e-discovery) disputes, may arise. Some e-discovery disputes involve the form of document production. Other disputes concern the sources the parties will search, and the search terms the parties will use when conducting a search for electronic documents. The arbitrators must be prepared to resolve these disputes. When resolving a dispute relating to the format for documents that parties are required to produce, the arbitrators should consider the totality of the circumstances, and they should balance any arguments about the burden of locating, reviewing, and producing e-discovery materials with the requesting parties' ability to use the documents.

## Format of E-Discovery

FINRA encourages parties to discuss the form in which they intend to produce a document and to agree on the form whenever possible. There are several formats for producing electronic files. "Native format" is the form in which the electronic file was created. For example, if a party creates a document in Microsoft Word® (Word), then production in a Word document file format would be production in native format.

Parties may have reasons to convert a native document into another format—for example, to facilitate document review or to allow redactions. The most common ways to convert electronic documents are printing native documents and producing them in hard copy instead of electronically, and scanning or electronically converting native documents into a "static format," such as a "TIFF" or "PDF" format. When a party converts a native document into another format, the change may affect the document in several ways:

- Appearance
- Searchability
- Availability of metadata
- Maneuverability

**Appearance**: In many cases, converting a native file (such as a Word document) to a hard copy or static format document will not affect the appearance of the document—for example, if you print a Word document and produce it in hard copy, it will look the same. But that is not always the case. For example, some native files may be configured to print only certain portions of the document. A user can set the "Print Area" in a Microsoft Excel® (Excel) spreadsheet that will cause only certain rows or columns to be printed. A hard copy print-out of such an Excel spreadsheet will therefore contain less information

Copyright 2017 FINRA, Inc. All Rights Reserved.

than the native file. Similarly, a hard copy print-out of a PowerPoint presentation may not contain speaker's notes that appear in the electronic file.

**Searchability**: At other times, converting a native file may affect the searchability of the document. The best example is printing out a Word document and producing it in hard copy form. In its native form, the contents of a Word document can be searched electronically for key words or information. In hard copy form, the document is not electronically searchable. Static electronic formats may or may not be searchable, depending on how they are converted. A PDF or TIFF file is essentially an electronic picture of a document and may not be searchable. But such a file will be searchable if the document image is accompanied by a data file that provides the text of the document in searchable form. This is sometimes referred to as "OCR" data, which stands for "optical character recognition." When parties refer to "OCR'ing" a document, they are referring to processing it in a specific way that will result in an "OCR" data file that accompanies an image file and renders the file searchable.

**Availability of Metadata**: Converting a native file may also affect the availability of metadata. Metadata describes how, when, and by whom electronically stored information (ESI) was collected, created, accessed, or modified, and how it is formatted. For example, an email contains many pieces of metadata, such as the date and time it was sent, who sent it, and who received it. Other native files also contain metadata such as the network location of the electronic document, the author of the document, and the last time the document was modified. It is possible to convert a native file to a static format and keep all the metadata attached—for example, a producing party can convert emails to TIFF and produce the metadata in an associated file. It is also possible to produce some, but not all, metadata associated with a native file. In the case of a conversion, parties should confer on whether metadata is required and what metadata, specifically, should be included in a production.

**Maneuverability**: Finally, converting a native file may affect the maneuverability of a document—the user's ability to manipulate data using the native application. A good example is an Excel spreadsheet. In its native format, a user can sort and filter data and examine embedded formulas and references in an Excel spreadsheet. If the Excel spreadsheet is printed or converted to TIFF or PDF, that ability is lost.

Certain of these definitions were adapted from a glossary of terms developed by the Sedona Conference Working Group on E-Discovery. The Sedona Conference's website explains that the Sedona Conference is a non-profit research and educational institute dedicated to the advanced study of law and policy in the areas of antitrust law, complex litigation, and intellectual property rights. You may access the glossary on the Sedona Conference's website. The Conference publishes the glossary "as a tool to assist in the understanding and discussion of electronic discovery and electronic information management issues…"

**Reasonably Usable Document Production**

During discovery, parties may ask the arbitrators to resolve disputes about the format for document production. A term that parties may use concerning document format is "reasonably usable." Parties must produce electronic documents in a reasonably usable format. Generally, a document that is produced in the format in which it is ordinarily maintained, or in a converted format that does not make it more difficult or burdensome for the requesting party to use in connection with the arbitration, is considered to be reasonably usable.

The reasonable usability of a document may depend on the specific needs of the parties. For example, imagine a case where the key factual issue is when an individual learned certain information. There, metadata may be very important for determining when that individual created relevant documents, and any format that does not include available metadata would not be reasonably usable. In other cases involving straightforward documents such as account statements and new account forms, metadata may not be relevant and hard copy production, without metadata, may be reasonably usable.

Reasonable usability may also depend on the relative resources of the parties. For example, customers of limited means might demonstrate that they would have difficulty producing documents in any format other than hard copy. Similarly, if reviewing documents in a certain format requires the requesting party to use specific technology, that format may not be reasonably usable if the technology is expensive or otherwise burdensome given the size of the claim, or the resources of the requesting party. If issues arise concerning e-discovery, you may ask the parties to brief the issue. It is the arbitrators' responsibility to determine the format for document production, and to memorialize their decision in a written order of production.

The language relating to e-discovery is technical. Ask the parties to explain the terms they are using so you can fully evaluate whether the parties are producing documents in a reasonably usable format. The SEC gives guidance about e-discovery to Commission staff in its Division of Enforcement Manual.

**Examples of Reasonably Usable Document Production**

**Conversion to Hard Copy**: An email in its native format is reasonably usable because a party can search it electronically. However, if a party converts the email into a hard copy document that a party cannot search electronically, then the document may not be reasonably usable. FINRA expects arbitrators to use their judgment when deciding issues relating to how parties should produce documents. If, for example, the volume of emails a party is producing is very small, the arbitrators could decide to allow a party to produce the emails in hard copy. Arbitrators may also conclude that more than one format is appropriate. For example, a native email cannot be produced with redactions. Therefore it may be appropriate to require native production for non-redacted emails, and static format production for the small subset of redacted emails.

Copyright 2017 FINRA, Inc. All Rights Reserved.

Courts have begun addressing the issue of what is reasonably usable production. In one court case, when a defendant printed out 35,000 pages of emails to produce them in paper format rather than native format, the court ordered the party to produce the emails in native format.

**Conversion to PDF**: Courts have held that parties cannot convert electronic documents into a PDF format that diminishes their usefulness. In one case, when a party took documents ordinarily maintained on a server, printed them off the server, and then scanned them back into a digital format as PDF files lacking metadata and searchable text, the court ruled that the production was not acceptable. The court ordered the party to produce the documents in a reasonably usable format. In that case, if the producing party had produced PDF files with accompanying data files that provided the metadata and searchable text, the court may have reached a different conclusion.

**Excel Files**: One specific issue that has arisen in the FINRA forum relates to Excel spreadsheets produced in PDF format rather than in native format. When an Excel spreadsheet is produced in its native format, it can be sorted and filtered to find data. In a PDF format, this functionality is lost.

**Emails**: Another issue that has arisen in the FINRA forum relates to conversion of multiple page emails into separate PDF documents, diminishing the efficiency of review of those documents. Generally, in these situations, the converted documents should be determined not to be reasonably usable. In general, if an email production does not clearly identify and group together emails and their corresponding attachments, it is not likely to be reasonably usable.

The examples noted above that pertain to fact specific cases are intended to provide guidance. Arbitrators should be aware that these demonstrative examples of court decisions are not binding on arbitration panels and panels may consider relevant case law presented to them by the parties. Arbitrators must decide what is reasonably usable, including determining whether metadata is necessary in a particular case given the nature of the documents sought and whether a discovery request is reasonable in scope.

Arbitrators should balance any arguments about the burden of locating, reviewing and producing e-discovery materials with the parties' need for the documents. The arbitrators may ask the parties to brief them on the law relating to production issues.

**Factors to Consider When Resolving E-Discovery Disputes**

Based on the above discussion, when resolving disputes about the format for producing electronic documents, arbitrators should consider the totality of the circumstances including, among other matters, the following factors in determining whether the electronic files are in a reasonably usable format:

- For documents in a party's possession or custody, whether the chosen form of production is different from the form in which a document is ordinarily maintained.

- For documents that must be obtained from a third party (because they are not in a party's possession or custody), whether the chosen form of production is different from the form in which the third party provided it.

- For documents converted from their original format, a party's reason(s) for choosing a particular form of production; how the documents may be affected by the conversion to a new format; and whether the requesting party's ability to use the documents is diminished by a change in the documents' appearance, searchability, metadata, or maneuverability.

The bottom line, however, is that the documents must be reasonably usable. The arbitrators should not condone production of documents in a format where they are not reasonably usable.

## Document Sources and Search Terms

The parties should discuss the electronic sources they will search, and the search terms they will use, and come to agreement on both whenever possible. The sources will vary depending on the party conducting the search. For example, an investor may have, among other sources, a personal computer, an email provider, a smart phone, and a back- up service or external hard drive. A firm may have, among other sources, email servers, email archives, file servers, and databases along with the personal computers and smart phones of its employees. If a dispute arises about the sources to be searched, arbitrators should ask the party requesting a search to explain why the party believes that a particular source is likely to lead to relevant evidence. The arbitrators should consider whether the requested source is duplicative or cumulative of other sources. The parties should also agree on search terms. If they fail to come to agreement on search terms, the arbitrators should ask them to explain why they selected the particular terms in dispute. It is the arbitrators' responsibility to determine the sources and search terms for document production, and to memorialize their decision in a written order of production.

## Modifications to Electronic Files

Sometimes parties modify electronic files they receive during discovery. For example, parties might modify an Excel spreadsheet to isolate a particular column of data that they want the arbitrators to focus on, or they may add a calculation to the spreadsheet based on the existing data. Rules 12514 and 13514 provide that at least 20 days before the first scheduled hearing date, all parties must provide all other parties with copies of all documents and other materials in their possession or control that they intend to use at the hearing that have not already been produced. Pursuant to Rules 12514 and 13514, if a party intends to use at the hearing an electronic file that the party modified, the party must produce the modified document to all other parties.

## Discovery Sanctions

Failure to comply with the discovery rules hinders the efficient and cost-effective resolution of disputes and undermines the integrity and fairness of FINRA's forum. On occasion, parties may use the discovery process to harass and burden their opponent. Arbitrators should take this into consideration when considering discovery issues.

Arbitrators have several tools available for addressing failures to comply with discovery rules. FINRA Rule 12511 provides that a party's failure to cooperate in the exchange of documents and information as required under the rules may result in sanctions. The panel may issue sanctions against any party for:

- failing to comply with the discovery provisions of the rules, unless the panel determines that there is substantial justification for the failure to comply; or
- frivolously objecting to the production of requested documents or information.

Further, under FINRA Rule 12212, the panel may dismiss a claim, defense or arbitration with prejudice as a sanction for the material and intentional failure to comply with an order of the panel if prior warnings or sanctions have proven ineffective.

## Additional Resources

Please see the sections of this Guide on Motions to Compel Discovery and Issuing Sanctions for additional information.

Discovery, Abuses and Sanctions online training
Managing Discovery of Electronic Information: A Pocket Guide for Judges
*The Neutral Corner*, Volume 1—2008

# PART SEVEN: MOTIONS

Though issues concerning discovery and motions can occur at any time during an arbitration proceeding, arbitrators most often face these challenges between the IPHC and the first evidentiary hearing. Given the important and often complicated nature of these issues, Parts Six and Seven of this Guide are devoted exclusively to addressing those issues.

## Panel's Authority to Rule on Motions

Under FINRA Rule 12409, the panel has the authority to interpret and determine the applicability of all provisions of the rules. The panel's interpretations are final and binding upon all the parties. All rulings and determinations of the panel must, however, be made by a majority of the arbitrators, unless the parties agree, or the rules or applicable law provides otherwise pursuant to FINRA Rule 12410.

## Types of Motions

Although arbitration is an informal process, a variety of matters may be subject to motion practice. The following is a non-exhaustive list of common motions filed in arbitration, each of which will be addressed individually in this Guide.

- Motion to Amend a Claim
- Motion to Consolidate Claims
- Motion to Sever Claims
- Motion to Change the Hearing Location
- Motion to Bar Defenses Due to Untimely or Incomplete Answers
- Motion to Compel Discovery
- Motion to Postpone a Hearing
- Motion to Dismiss
- Motion in Limine

### Motion to Amend a Claim

FINRA Rule 12309 provides that parties may amend their pleadings, including adjustments to their damage requests, up until the time FINRA staff appoints a panel. Once a panel is appointed, parties may only amend their pleadings if the panel grants a motion to amend the pleading. However, once the ranked arbitrator lists are due to FINRA, no party may amend a pleading to add a new party to the arbitration until a panel has been appointed and the panel grants a motion to add the party.

## Motion to Consolidate Claims

FINRA Rule 12312 provides that one or more claimants may join multiple claims together in the same arbitration if the claims contain common questions of law or fact and:

- the claims assert any right to relief jointly and severally; or
- the claims arise out of the same transaction or occurrence, or series of transactions or occurrences.

FINRA Rule 12313 provides that one or more parties may name one or more respondents in the same arbitration if the claims contain any questions of law or fact common to all respondents and:

- the claims are asserted against the respondents jointly and severally; or
- the claims arise out of the same transaction or occurrence, or series of transactions or occurrences.

Before the panel's appointment, staff may consider a party's motion to consolidate claims. After its appointment, the panel may reconsider the decision to consolidate the claims based on a party's motion.

## Motion to Sever Claims

Under FINRA Rules 12312 and 12313, parties may request that a claim be heard separately from another claim. Arbitrators should refer to the standards outlined in the Motion to Consolidate Claims section of this Guide to determine whether the claims were appropriately consolidated.

## Motion to Change the Hearing Location

In accordance with FINRA Rule 12213, FINRA will generally select the hearing location closest to the customer's residence at the time of the events giving rise to the dispute, unless the hearing location closest to the customer's residence is in a different state. In that case, the customer may request a hearing location in the state where the customer resided at the time of the events giving rise to the dispute, even though it may be further from the nearest out-of-state hearing location.

In cases involving firms only, or more than one associated person, under FINRA Rule 13213 FINRA will consider several factors when selecting the hearing location, including:

- the parties' signed agreement to arbitrate, if any;
- which party initiated the transaction or business in issue; and
- the location of essential witnesses and documents.

Copyright 2017 FINRA, Inc. All Rights Reserved.                44

Parties may request that the case be heard at another location. After the panel is appointed, the panel will address a motion to change the hearing location.

## Motion to Bar Defenses Due to Untimely or Incomplete Answers

FINRA Rule 12308 provides that the panel may, upon motion by a party, bar a party from presenting any defenses or facts at the hearing if the party did not file a timely answer. In addition, if a party answers a claim that alleges specific facts and contentions with a general denial, or fails to include defenses or relevant facts in its answer that were known to it at the time the answer was filed, the panel may bar that party from presenting the omitted defenses or facts at the hearing.

## Motion to Compel Discovery

FINRA Rule 12509 provides that a party may make a motion asking the panel to order another party to produce documents or information if the other party has failed to respond to discovery requests, or objects to the production of documents or information under the rules. The rules require that these motions must include the disputed document request or list item, a copy of any objection thereto and a description of the efforts of the moving party to resolve the issue before making the motion.

Before ruling on a request, arbitrators must determine that a document is relevant or likely to lead to relevant evidence. Only after determining relevancy, should the arbitrators consider the cost or burden of production. If a party has demonstrated that the cost or burden of production is disproportionate to the need for the documents, arbitrators should see whether there are alternatives that can lessen the impact, such as narrowing the relevant time frame or scope of the request, or whether the other documents can provide the same information.

For issues involving privacy or confidentiality, arbitrators may want to consider ordering the redaction (removal) of names or other information, or having the parties sign confidentiality agreements. If a party claims a document is confidential, the burden is on that party to establish its confidentiality.

Please see the sections of this Guide on Discovery for additional information.

## Motion to Postpone a Hearing

FINRA Rule 12601 provides that arbitrators may postpone any hearing(s) either on their own initiative or at the request of any party to the arbitration. A party may request that the arbitrators postpone a hearing for a variety of reasons, such as the sudden inability of a necessary party, counsel or material witness to appear.

Copyright 2017 FINRA, Inc. All Rights Reserved.

**Consensual Postponement**

A hearing will be automatically postponed if all parties agree to postpone the hearing. However, if all parties jointly request or agree to more than two postponements, the panel may dismiss the arbitration without prejudice.

**Contested Motion to Postpone**

When parties request a postponement without the agreement of all parties, the panel may not grant a postponement request made within 10 days of a scheduled hearing session, unless the panel determines that good cause exists. In deciding whether to grant a contested postponement request, the arbitrators should consider the following factors:

- fairness to the parties;
- the objection of the opposing party;
- the merits of the request;
- previous postponements; and
- the ability to conduct a productive hearing.

Arbitrators should be aware that certain statutes permit parties to move to vacate arbitration awards by alleging that arbitrators exceeded their authority by refusing to grant a reasonable postponement request.

Pursuant to FINRA Rule 12601(b):

- Except as otherwise provided, a postponement fee will be charged for each postponement agreed to by the parties, or granted upon request of one or more parties. The fee will equal the applicable hearing session fee under FINRA Rule 12902. The panel may allocate the fee among the party or parties that agreed to or requested the postponement. The panel may also assess part or all of any postponement fees against a party that did not request the postponement, if the panel determines that the non-requesting party caused or contributed to the need for the postponement. The panel may waive the fees.

- If a postponement request is made by one or more parties and granted within three business days before a scheduled hearing session, the party or parties making the request shall pay an additional fee of $100 per arbitrator. If more than one party requests the postponement, the arbitrators shall allocate the $100 per arbitrator fee among the requesting parties. The arbitrators may allocate all or portion of the $100 per arbitrator fee to the non-requesting party or parties, if the arbitrators determine that the non-requesting party or parties caused or contributed to the need for the postponement. In the event that a request results in the postponement of consecutively scheduled hearing sessions, the additional

fee will be assessed only for the first of the consecutively scheduled hearing sessions. In the event that an extraordinary circumstance prevents a party or parties from making a timely postponement request, arbitrators may use their discretion to waive the fee, provided verification of such circumstance is received.

- No postponement fee will be charged if a hearing is postponed:
  - Because the parties agree to submit the matter to mediation administered through FINRA, except that the parties shall pay the additional fees described in FINRA Rule 12601(b)(2) for late postponement requests;
  - By the panel in its own discretion; or
  - By the Director in extraordinary circumstances.

While the rules do not limit the number of times the arbitrators may postpone a hearing, arbitrators should be mindful that one of the goals of arbitration is to provide a speedy method for resolving disputes. The arbitrators' role is to bring the parties' disputes to a fair and expeditious conclusion so arbitrators should refrain from postponing hearings on their own accord whenever possible.

## Motions to Dismiss

A motion to dismiss is a request made to the panel by a party—prior to or after the conclusion of the case-in-chief—to eliminate some or all claims raised by the party filing a claim. Under the Code, there are three types of motions to dismiss, each of which will be addressed separately in this Guide:

- FINRA Rule 12206(b) Eligibility Motions: Motions to dismiss based on eligibility grounds. These motions are usually made before a party has concluded its case-in-chief.

- FINRA Rule 12504(a) Motions: Motions to dismiss filed before a hearing on the merits (*i.e.*, prehearing motions) or motions filed during the hearing on the merits but before a party has concluded its case-in-chief.

- FINRA Rule 12504(b) Motions: Motions to dismiss made after a party has concluded its case-in-chief.

### FINRA Rule 12206(b) Eligibility Motions

A respondent may file a motion to dismiss a case because of eligibility under FINRA Rule 12206, which states that no claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim.

In addition to stating that the full panel will resolve any questions regarding eligibility of a claim, FINRA Rule 12206 also contains the following procedural requirements:

- A party must file an eligibility motion in writing, separately from the answer, and only after filing the answer.
- A party must file the motion at least 90 days before a hearing, and the other parties have 30 days to respond. Any reply must be made within five days of receipt of a response.
- FINRA staff will forward the eligibility motion and all response papers to the full panel for review.
- If a party files a motion to dismiss on multiple grounds, including eligibility, the panel must decide eligibility first.
- Before granting a motion under this rule, the panel must hold a hearing on the record.
- If the panel grants an eligibility motion, the decision must be unanimous, and must be accompanied by a written explanation.
- If the panel determines that a claim was filed after the six-year eligibility cut-off and grants the eligibility motion, it cannot rule on any other grounds for dismissal.

The panel determines whether a claim meets the six-year eligibility requirement by reviewing the submissions, pleadings and arguments of the parties. When appropriate, the panel may give the parties a reasonable opportunity to conduct discovery. As with any discovery request, arbitrators have discretion to grant, deny or modify the request. If the arbitrators have additional questions about the eligibility of the claim, they should ask the parties to brief the issue. The arbitrators may find that there is a continuing occurrence or event giving rise to the dispute. For example, although a customer purchased stock 10 years ago, there are allegations of ongoing fraud starting with the purchase, but continuing to a date within six years of the date the claim was filed.

If the panel dismisses a claim on the grounds of eligibility, the non-moving party may withdraw any remaining related claims without prejudice and may pursue all claims, including the dismissed claim, in court. Before dismissing a claim, however, the arbitrators should carefully consider each party's positions in their moving, response and reply papers and oral arguments, and must hold a hearing on the record. If the panel reaches a unanimous decision to grant the eligibility motion, it should inform FINRA of its ruling promptly and provide a written decision.

**Fees, Costs and Sanctions**

If the panel denies an eligibility motion, the panel must assess forum fees associated with any hearings on the motion against the moving party. If the panel deems that an eligibility motion was frivolous, the panel must award reasonable

costs and attorneys' fees to any party that opposed the motion. If the panel determines that a party filed an eligibility motion in bad faith, it may issue sanctions under FINRA Rule 12212. Please see the section of this Guide on Issuing Sanctions for additional information.

## FINRA Rule 12504(a) Motions to Dismiss Before a Party Concludes its Case-in-Chief

FINRA believes that parties have the right to a hearing in arbitration. Therefore, motions to dismiss filed prior to the conclusion of a party's case-in-chief are discouraged and granted only under limited circumstances. According to FINRA Rule 12504(a), the panel cannot act upon a motion to dismiss a party or claim, unless the panel determines that:

- the non-moving party previously released the claim(s) in dispute by a signed settlement agreement and/or written release;

- the moving party was not associated with the account(s), security(ies) or conduct at issue; or

- the non-moving party previously brought a claim regarding the same dispute against the same party that was fully and finally adjudicated on the merits and memorialized in an order, judgment, award, or decision.

If a party files a motion to dismiss on multiple grounds, including eligibility, the panel must decide eligibility first, pursuant to FINRA Rule 12206. If the panel grants the motion to dismiss on eligibility, it must not rule on any other grounds for the motion.

If filing a FINRA Rule 12504(a) motion, the party must do so in writing, separately from the answer, and only after filing the answer. Such motions must be filed at least 60 days in advance of the hearing, and the other parties will have 45 days to respond. Any reply must be made within five days of receipt of a response. FINRA staff will forward motions and responses to the full panel for review. The panel should ask the parties to provide briefs if it needs additional information to decide a FINRA Rule 12504(a) motion to dismiss.

Not only do FINRA Rule 12504(a) motions require the input of the entire panel, but the panel must also hold a hearing before it grants such a motion, unless the parties waive the hearing requirement. If the panel grants the motion, the decision must be unanimous and accompanied by a written explanation. If the panel denies the motion to dismiss, a party may not re-file it, unless specifically permitted by panel order.

## Fees, Costs and Sanctions

If the panel denies a FINRA Rule 12504(a) motion, the panel must assess forum fees against the party who filed the motion. If the panel deems the motion frivolous, it must also award reasonable costs and attorneys' fees to the party who opposed the motion. If the panel determines that a party filed a motion to dismiss in bad faith, it may issue sanctions under FINRA Rule 12212. Please see the section of this Guide on Issuing Sanctions for additional information.

## FINRA Rule 12504(b) Motions to Dismiss After a Party Concludes its Case-in-Chief

The restrictions set forth in FINRA Rule 12504(a) do not apply to FINRA Rule 12504(b) motions to dismiss after a party concludes its case-in-chief. After the claimant has presented its case—including all documentary evidence and testimony—the respondent may ask the panel to dismiss the claim on the grounds that the claimant failed to prove the allegations in the statement of claim or failed to prove a right to recovery. Generally, these motions are made orally at the hearing after the claimant's presentation.

When ruling on motions to dismiss after a claimant has concluded its case-in-chief, arbitrators should view the evidence in the light most favorable to the claimant. If the claimant has presented credible evidence to support a recovery, the panel should deny the motion. However, if the testimony and documents do not support any possible recovery, the panel may grant the motion to dismiss the claim.

Both sides have invested a lot of time and effort in the arbitration. Arbitrators should be sure that all parties had a full opportunity to argue the motion to dismiss. Consider the following issues before granting a motion to dismiss:

- Did the claimant have the chance to call all witnesses? Why or why not?
- Did the claimant meet its burden of proof? When determining this, remember to look at all evidence presented in the light most favorable to the claimant.
- Does the claimant have any further witnesses, evidence or testimony to offer?

The panel may direct the respondent to present its case, even if the claimant's case is weak and the respondent's motion has some validity.

If the panel grants a FINRA Rule 12504(b) motion and dismisses all of the claimant's claims after the presentation of the claimant's case, the panel must still complete the following tasks:

- render a written award under FINRA Rule 12904; and
- consider how to allocate forum fees and costs among the parties.

Copyright 2017 FINRA, Inc. All Rights Reserved.

If the panel grants a FINRA Rule 12504(b) motion to dismiss on some but not all of the claimant's claims, the hearing would proceed as to the surviving claims. At the conclusion of the hearing, the panel would issue an award that disposes of each claim.

**Fees, Costs and Sanctions**

Note that FINRA Rule 12504(b) does not preclude a panel from issuing an explanation or awarding costs or fees in connection with the motion. It also does not prevent a panel from issuing sanctions under FINRA Rule 12212 if it determines that a party filed a motion to dismiss in bad faith. Please see the section of this Guide on Issuing Sanctions for additional information.

**Motion in Limine**

A motion in limine is a request for the arbitrators to rule on the admissibility of evidence in advance of the hearing. Parties may try to include other issues for ruling when filing motions in limine, including requests to dismiss one or more of the alleged claims. Arbitrators should treat any requests for dismissal of claims as motions to dismiss and respond to them in accordance with FINRA's motion to dismiss rules. As with all motion practice, arbitrators should be alert to the possible misuse of motions as tactics to delay the hearing.

## Additional Resources

Motion to Dismiss and Eligibility Rules Frequently Asked Questions
*Regulatory Notice 09-07*
Motions to Dismiss online training

Copyright 2017 FINRA, Inc. All Rights Reserved.

# PART EIGHT: BEFORE THE EVIDENTIARY HEARING

## Preparing for the Evidentiary Hearing

Proper preparation for a hearing requires that arbitrators review all filed claims, answers, and specific motions and responsive papers in advance. Arbitrators should also review the Codes of Arbitration Procedure and FINRA procedural guidelines, such as the FINRA Discovery Guide for customer cases and the Hearing Script. These documents are included in the case packet sent by FINRA staff at the time of the arbitrator's appointment. If arbitrators do not receive the documents described here, they should immediately ask the assigned staff to provide them.

FINRA Rule 12514 requires parties, at least 20 calendar days prior to the first scheduled hearing date, to serve on each other copies of documents in their possession that they intend to present at the hearing and to identify witnesses they intend to call. Parties may shorten or lengthen the exchange deadlines by agreement. The witness lists will also be sent to the arbitrators by FINRA staff for review prior to a hearing. If arbitrators do not receive the witness lists, they should immediately ask the assigned staff to provide them.

While reviewing the pleadings, arbitrators should AGAIN look for any potential conflicts, as this is an ongoing duty. For example, a party may retain attorneys shortly before a hearing commences, which may require arbitrators not only to repeat previously disclosed information but also to make additional disclosures. Similarly, arbitrators should look for any potential conflicts when reviewing witness lists.

The arbitrator should immediately notify FINRA staff of any additional disclosures or conflicts that might prevent an impartial determination or create an appearance of bias. Arbitrators should consider any circumstance that relates to the subject matter in dispute, as well as to existing or past, direct or indirect, financial, business, professional, family, social or other relationships with any of the parties, counsel or witnesses. As indicated earlier, the duty to disclose requires arbitrators to make a reasonable effort to become aware of these relationships or interests.

## Offsite Hearing Locations Guidance

Arbitrators should review the document entitled "Information for Hearings Not Held at FINRA Dispute Resolution Offices" to ensure that they follow FINRA's offsite hearing location procedures.

# PART NINE: DURING THE EVIDENTIARY HEARING

## Before the Hearing Starts

Arbitrators should arrive early and confirm the room number for their hearing because there may be multiple hearings conducted in the building on the same day. The arbitrators should not allow the parties to enter the room until all the parties have arrived. To maintain the appearance of neutrality, arbitrators should keep a formal demeanor and avoid engaging in small talk with the parties and their representatives.

At the hearing, the panel's first duty is to identify the people in attendance, though arbitrators should refrain from addressing the parties or their representatives by their first names. Identifying those present sets the right tone for the proceedings, and helps to maintain the confidentiality of the process by ensuring that only involved individuals are present.

### Parties

FINRA Rule 12602 states that all parties are entitled to attend all hearings. A corporation is also entitled to have a corporate representative in the room.

FINRA Rule 12208(a) provides that parties may represent themselves in any arbitration held in a United States hearing location. A member of a partnership may represent the partnership. A bona fide officer of a corporation, trust, or association may represent the corporation, trust, or association. In addition, a non-attorney may represent a party, unless state law prohibits such representation, the person is currently suspended or barred from the securities industry in any capacity or the person is currently suspended from the practice of law or disbarred. Please see the section of this Guide on Parties' Presentations for additional information about pro se parties.

#### Non-Appearing Parties

FINRA Rule 12603 states that if a party fails to appear at a hearing after having been notified of the time, date and place of the hearing, the panel may determine that the hearing go forward, and render an award as though all parties had been present. The panel should indicate on the record the attempts FINRA staff made to notify the non-appearing party of the hearing. If the panel is satisfied that the party received adequate notice of the hearing from FINRA, the panel may proceed in that party's absence.

### Counsel

FINRA Rule 12208(b) provides that at any stage of an arbitration proceeding held in a United States hearing location all parties have the right to be represented by an attorney at law in good standing and admitted to practice before the Supreme Court of the United

States or the highest court of any state of the United States, the District of Columbia or any commonwealth, territory or possession of the United States, unless state law prohibits such representation.

### Special Rules for Out-of-State Counsel

In some jurisdictions, out-of-state counsel cannot represent a client in arbitration. In these jurisdictions, it is considered the unauthorized practice of law to provide such legal representation without being admitted to the appropriate Bar. Specifically, California, Florida, Illinois, Michigan, New Jersey, New York and Oregon each have specific rules concerning requirements that out-of-state counsel must comply with when representing a party to an arbitration proceeding in one of these states.

**Witnesses**

Generally there are two types of witnesses present during an arbitration hearing: fact witnesses and expert witnesses:

- Fact witnesses testify on the material facts of the case. Unless all parties agree otherwise, the panel will usually sequester fact witnesses.
- Expert witnesses express views, give interpretations and apply their standards of expertise to facts others have provided. Absent persuasive reasons to the contrary, expert witnesses should be permitted to attend all hearings.

Pursuant to FINRA Rule 12602, a non-party witness may be represented by an attorney at an arbitration hearing while the witness is testifying. Unless otherwise authorized by the panel, the attorney's role is limited to the assertion of recognized privileges, such as the attorney client and work product privileges, and the privilege against self-incrimination. The panel will determine the extent to which the attorney may participate.

Parties may request that the arbitrators direct reimbursement for expenses of a witness. In some instances, the panel may wait until the conclusion of the hearing to assess the fees. For example, if a witness is located a significant distance from the hearing site, the panel might decide to assess the cost of the witness' travel after the parties have presented their cases. Please see the section of this Guide on Witness and Production Fees for additional information.

## Starting the Hearing

Hearings are generally held either at a FINRA office, a Regus Conference Center, or in a local hotel or meeting facility. All logistics for the hearing are handled by FINRA staff and communicated to the parties and the arbitrators.

## Hearing Decorum

Arbitrators must set the right tone for the hearing from its very outset. Arbitrators should maintain decorum at all times. Shouting, profanity or gratuitous remarks should be stopped. If a hearing becomes heated, arbitrators should intervene or, if necessary, call a recess.

### Party Representative Behavior

Some counsel become attuned to the system and try to use the informality to take an unfair advantage by responding to arguments, making gratuitous statements, or by asking leading questions of their own witnesses. (A leading question is a question in which the wording of the question suggests what the expected answer should be.) While leading questions might be appropriate to expedite the hearing and to cover non-controversial matters, it is ordinarily inappropriate for counsel to ask leading questions of their own witnesses on important matters and, in effect, testify for the witness. If the arbitrators determine that a question is leading, the arbitrators should explain to counsel that the panel would appreciate hearing the witness' testimony, as it is the witness' testimony—not counsel's—that is evidence.

On the other hand, it is not inappropriate for counsel to ask leading questions of witnesses who are not their own. For example, under federal rules of evidence, leading questions are permitted only during cross-examination and if a party calls a hostile witness, adverse party or a witness identified with an adverse party.

Whenever the arbitrators believe that counsel is using the informality of the proceedings to their advantage, the arbitrators should intervene and bring the offending practice to a halt even if the opposing party does not object.

### Arbitrator Behavior

Arbitrators should avoid comments or body language that indicates a preference for either side. Care should be exercised, particularly when questioning a witness, so that the arbitrator does not indicate disbelief. Grimaces, frowns or hand signals should be avoided. The arbitrators should strive to conduct themselves appropriately. All parties should be given a fair opportunity to present their cases.

## Avoiding Ex Parte Communications

Unless operating under the Direct Communication Rule, FINRA Rule 12211 provides that no party, or anyone acting on behalf of a party, may communicate with any arbitrator outside of a scheduled hearing or conference regarding an arbitration unless all parties or their representatives are present. Communications include an exchange about the arbitration case, as well as an exchange of pleasantries or casual comments. Arbitrators should avoid being in the hearing room when fewer than all of the parties are

present (*e.g.*, when a hearing adjourns, ask all the parties to leave at one time).  While a case is ongoing, you must avoid social contacts with parties or their representatives except as part of a large group (*e.g.*, a Bar Association dinner, etc.).

While arbitrators should avoid ex parte communications, they may proceed with a hearing in the absence of a party if the party has been given a reasonable opportunity to appear. Please see the section of this Guide on Parties for additional information on non-appearing parties.

**Using the Hearing Script**

FINRA staff will provide the arbitrators with a Hearing Script to use during the hearing. The script outlines how the hearing is conducted and what is expected of the parties. The arbitrators should keep in mind that they may modify the procedures outlined in the Hearing Script to accommodate special circumstances that arise during a hearing.

The chairperson will read a statement into the record that acknowledges that the arbitrators have read all of the pleadings submitted by the parties. The statement also outlines the manner in which the hearing should proceed, including the order in which the parties may make opening and closing statements and present evidence. Further, the script requires arbitrators to repeat their earlier disclosures on the record because it ensures that:

- there is a record of the disclosure;
- all parties and their representatives received the disclosure statement;
- new representatives who had not appeared previously know of the disclosure; and
- the parties are given the chance to ask further questions about the disclosure.

**Record of the Hearing**

Arbitrators must be sure that there is a complete record of the hearing. Therefore, arbitrators should use: the Attendance List to track the attendance of the parties, representatives and witnesses; and the Exhibit List (Claimant's Exhibits and Respondent's Exhibits) to track the parties' exhibits.

All hearings are digitally recorded, and the digital recording is the official record of the proceeding, even if it is transcribed pursuant to FINRA Rule 12606. The panel member in charge of recording the proceedings should:

- identify the recording with the case name and number, the hearing date and the recording number;
- clearly identify each individual hearing date on the record;
- ensure that the recording device is functioning properly;
- be certain that the recording device is turned off during all executive sessions;
- remember to restart the recording device after lunch, breaks and executive

Copyright 2017 FINRA, Inc. All Rights Reserved.

sessions; and
- return all recordings to FINRA at the end of the hearing. Please see the section of this Guide on Ethical Considerations Regarding Information Security.

The digital recording or stenographic record will be the official record of the hearing, and parties and counsel should refrain from making audio or video recordings or transmissions of the proceedings unless otherwise agreed by all parties and arbitrators.

Any party may make a stenographic record of the hearing. However, even if a stenographic record is made, the digital recording will be the official record of the proceedings, unless the panel determines otherwise. If the stenographic record is determined by the panel to be the official record of the proceeding, a copy of the stenographic record must be provided to the Director, each arbitrator and all parties. The cost of making and copying the stenographic record will be borne by the party electing to make the stenographic record, unless the panel determines otherwise. For more information on using the digital recorder, view our training course available online.

**The Parties' Presentations**

While the arbitrators should maintain control of the presentations made during the hearing, they must also be sure that all parties have a full opportunity to present their case. To do this, the panel will (1) explain the procedures and ground rules to be followed; (2) ensure that the parties have an opportunity to make an opening statement; (3) listen to the parties' presentations; (4) ask questions to clarify and elicit important facts; (5) rule on the admissibility of evidence; (6) facilitate testimony by telephone or affidavit; and (7) rule on motions.

### Pro Se Parties

As indicated earlier in this part of the Guide, a party on occasion will appear at the hearing without counsel (pro se party), and arbitrators should be sensitive to the fact that the pro se party is most likely inexperienced in either litigation or the arbitration process. Pro se parties may need some guidance from the panel, and the panel needs to use its judgment to determine how much guidance to provide. In some cases, the panel must take a more active role. However, at all times the panel must be careful to maintain its neutrality. The chairperson may explain the following points to pro se parties:

- Arbitration is not mediation. The arbitrator's role is therefore not to reach a compromise decision, but to make a final decision on the facts, determine whether liability exists and, if so, the amount of the damages, if any.
- The chairperson will explain the arbitration procedure—including the Code and the sequence of testimony and questions—to a pro se party. However, as arbitrators, the panel cannot present a party's case.
- The purpose of the opening statement is to allow the parties to explain what they intend to prove—not to present evidence.

Copyright 2017 FINRA, Inc. All Rights Reserved.

- While the hearing must be orderly, arbitrators are not bound by formal rules of evidence.
- A pro se party may present testimony in a narrative statement.
- When questioning witnesses, parties may not argue with them.
- Parties must address any motions or objections to the panel, not to the other parties.
- If a party feels a question from the other party is irrelevant or inappropriate, the party may object.
- Parties must give copies of each document to the opposing parties—who may object to the document—before the panel decides whether to admit it as evidence.
- All parties have the right to be represented by a lawyer at any time in the proceeding.

All efforts to assist a party should be balanced against the need to remain impartial. If an issue arises with respect to a pro se party, the arbitrators should contact a FINRA staff member for assistance.

## Admissibility of Evidence During the Party's Presentation

FINRA Rule 12604 provides that the panel will decide what evidence to admit. The rule also provides that the panel is not required to follow state or federal rules of evidence.

The rules of evidence applied in a court of law are not usually used in arbitration because arbitration is less formal than judicial proceedings, and allows for more liberal introduction of evidence than would be permitted in court. This does not mean that the arbitrators should accept everything presented to them. In fact, the opposing party will probably object to at least some of the evidence introduced. The evidence should relate to the case. The parties should be given an opportunity to object or comment on anything that is presented to the panel. The key consideration is fairness.

## Exclusion of Evidence During the Party's Presentation

FINRA Rule 12514(c) provides that—at a party's request—arbitrators may exclude from the hearing any **documents not exchanged**. When considering such requests, the panel should determine:

- whether the document should have been produced;
  - was the document covered by a document request?
    - if so, why wasn't it produced at that time or produced as part of the 20 day identification of documents and witnesses?
  - was the document request objected to?
  - was the document request narrowed such that production was not required?
- when the document should have been produced;
- the significance of the document to be produced;

- if the document sought for rebuttal or impeachment purposes; and
- whether the panel has previously allowed both sides to submit documents that had not previously been produced.

If the submitting party has no valid reason why the document was not provided previously, the panel should consider excluding the document. Withholding documents is contrary to FINRA rules, wastes the time of the parties and the panel and causes undue surprise and prejudice to the affected party.

FINRA Rule 12514(c) also provides that—at a party's request—arbitrators may exclude from the hearing **witnesses not identified**. When considering the appearance of a witness, the panel should determine:

- whether the witness should have been identified;
- the significance of the testimony of the witness;
- if the witness testimony is sought for rebuttal or impeachment purposes; and
- whether the panel has previously allowed the testimony of witnesses not previously identified.

If the party has no valid reason why the witness was not identified previously, the panel should consider excluding the witness' testimony. Failing to identify witnesses is contrary to FINRA rules, wastes the time of the parties and the panel and causes undue surprise and prejudice to the affected party.

If the panel decides not to exclude the document or testimony, it should take sufficient steps to reduce any prejudice to the affected party. Such steps may include:

- time to review the document;
- the opportunity to re-call witnesses whose testimony might be relevant; and
- sanctions against the party who did not timely produce the document or identify the witness.

**Issuing Sanctions**

FINRA Rule 12212 provides arbitrators with wide discretion in addressing a party's failure to comply with any provision of the rules, or any order of the panel or single arbitrator authorized to act on behalf of the panel. For example, arbitrators may assess monetary penalties payable to one or more parties; preclude a party from presenting evidence; make an adverse inference against a party; assess postponement and/or forum fees; and assess attorneys' fees, costs, and expenses. The panel may dismiss a claim, defense or arbitration with prejudice as a sanction for material and intentional failure to comply with an order of the panel if prior warnings or sanctions have proven ineffective.

It is not appropriate to sanction a party's attorney for conduct or noncompliance because FINRA does not have jurisdiction over attorneys. In addition, arbitrators should not make sanctions against parties payable to FINRA as FINRA is not a party to the

proceeding. Please see the section of this Guide on Awarding Sanctions, If Any for additional information.

## Questions by Arbitrators and Factual Investigations

Each case must be judged solely on the written and testimonial evidence presented at the hearing. Each arbitrator has a right to question witnesses. Even though it is proper for an arbitrator to ask questions, every effort should be made to avoid taking over a hearing or becoming an advocate. Parties and their attorneys should be permitted to try their own cases. Generally, arbitrators should refrain from questioning a witness until all parties have finished their examination.

Arbitrators should not make independent factual investigations of a case. When arbitrators are in doubt about an issue, legal or otherwise, they should request briefs from the parties. If cases are cited in a party's motion or brief, and the arbitrators wish to read the full court opinions, the arbitrators should ask the parties to supply copies. Arbitrators generally should review only those materials presented by the parties.

## Rulings Made During the Hearing

All arbitrators share an equal status. The chairperson should neither make, nor appear to make, unilateral rulings on key issues. It is incumbent on the other arbitrators to call any occurrence of this nature to the chairperson's attention during an executive session. The panel may, however, agree to have the chairperson make decisions on objections to evidence introduced during the hearing.

## Executive Sessions

Executive sessions are privately held discussions among the arbitrators outside the presence of the parties and their representatives, witnesses and stenographers. An executive session may be requested by any arbitrator for any reason provided they facilitate a full and fair hearing. Arbitrators may call such sessions to discuss procedural or substantive motions or to discuss a question, concern or observation from any member of the panel, at any time during the hearing. All executive sessions are off the record. Before the hearing begins, the arbitrators should agree on how to call an executive session.

In an executive session, the arbitrators should try to reach a consensus. Not all panel decisions will be unanimous. In the event that the panel does not agree on a decision, all rulings and determinations should be made by the majority of the arbitrators. At some point during the hearing, an arbitrator may be in the minority and will have to accept a ruling with which the arbitrator disagrees. The arbitrator should avoid the appearance of dissension in the hearing room. While disagreements may occur, the appearance of cooperation and teamwork among arbitrators is key to a successful hearing. When the hearing reconvenes, the chairperson will announce the decision, if any, but does not need to state the rationale for the decision.

Copyright 2017 FINRA, Inc. All Rights Reserved.

## Concluding the Hearing: Ascertaining the Final Damage Requests

During the course of discovery or the evidentiary hearing, parties may change their initial damage requests. Therefore, prior to the close of the hearing, the arbitrators should request that the parties restate their respective claims. Parties requesting damages should also provide the arbitrators with a summary of their final request for damages, which may be presented as a range, as opposed to a specific monetary amount. If a party's final damage request amount is different from what the party requested in an earlier pleading, then these new final damage requests, as well as the parties' original requests as specified in their pleadings, will be reflected in the award. Arbitrators will note any updated damage requests in Section 10 of the [Award Information Sheet](#).

Since the panel also determines how to assess hearing session fees that have accrued in the case, the parties should include a statement recommending how the panel should assess these fees.

### Exiting the Hearing Room

At the conclusion of a hearing, a pre-designated panel member should collect all accepted exhibits and return them to FINRA as the official record. If deliberations are not yet final, arbitrators should take their case-related materials at the conclusion of the hearing. Otherwise, arbitrators should follow the guidance below to properly dispose of their case-related materials.

### Proper Disposal of Case-Related Materials

#### For Hearings Held at a FINRA Office or a Regus Conference Facility:

Case materials that are to be shredded may be left behind **only** if the hearing is held at a FINRA office or in a Regus meeting room. Such materials must clearly be marked for shredding.

For hearings take place at a Regus meeting room, arbitrators should alert the Regus onsite representative that documents marked to be shredded remain in the room. Arbitrators should not expense these costs; Regus will bill FINRA directly to shred the arbitrators' documents.

Copyright 2017 FINRA, Inc. All Rights Reserved.

**For Hearings Held Outside a FINRA Office or Regus Conference Facility**

Arbitrators should encourage the parties to take their respective materials with them. Likewise, the arbitrators should take their copies of the case-related materials with them when they leave and either shred them at home or return them to FINRA for proper disposal. Please see the section of the Guide on Ethical Considerations Regarding Information Security.

## Hints for the Chairperson

Although the chairperson casts one vote in all matters, the chairperson presides over the arbitration proceeding, and his or her approach will influence the panel's effectiveness.

The chairperson should make special efforts to:

- become familiar with all matters that may be presented;
- discuss with FINRA staff what motions will be presented;
- read into the record all agreed-upon dates and times for future sessions;
- ensure that all witnesses are sworn; and
- confirm that the record is complete.

The chairperson should be prepared to:

- tell counsel to avoid repetitive and irrelevant matters;
- maintain decorum;
- instruct a witness, when appropriate, to answer only the questions asked and not testify on matters unresponsive to questions;
- ask counsel to speed up a line of questioning when possible;
- advise counsel that they should have sufficient copies of all exhibits;
- encourage parties to agree on the introduction of documents as joint exhibits.

## Additional Resources

Civility in Arbitration online training
Chairperson online training

# PART TEN: AFTER THE EVIDENTIARY HEARING

## Deliberations

Arbitrators have a duty to participate in making final and binding decisions with regard to all important procedural issues, properly submitted claims and costs.

Arbitrators should begin the deliberation process after the hearing closes. Arbitrators should not attempt to decide the final outcome of the dispute until all the evidence is received. The arbitrators may wish to review the hearing record, the pleadings and submissions and their notes before starting deliberations. Arbitrators may also request that the parties submit post-hearing briefs to help clarify issues.

After each panel member has reviewed the case information, the chairperson should begin the discussion by asking the panel members to express their individual views of the case. All arbitrators must take part in deliberating the facts and issues, and their observations and opinions should be heard, acknowledged and considered. The panel should proceed with the deliberation in the following order:

- determine the facts of the case by evaluating the credibility of the witnesses and the relevance of the testimony;
- determine the facts of the case by evaluating the relevance of the documents;
- apply the law to the facts; and
- reach a decision.

FINRA Rule 12410 of the Code states that all rulings and determinations by the panel shall be by a majority of the arbitrators. A decision on liability, too, requires a majority vote. While a decision requires at least two panel members agree on liability, the reasons behind their determinations may differ. For example, a party may present several theories to support its argument on liability. As long as two panel members agree on liability, even if based on different theories, the panel may make a finding on the party's behalf. If the claimant's claim is separated into specific issues, the arbitrators will probably want to separate their analysis and decision by issue, too.

Arbitrators are not strictly bound by legal precedent or statutory law. However, it is important that arbitrators not manifestly disregard the law. By doing so, your award may be vacated. In other words, if the parties have provided the panel with the law, the law is clear, and it applies to the facts of the case, the arbitrators should not disregard it.

As mentioned in the previous section of this Guide, parties may have changed their initial damage requests during the course of discovery or the evidentiary hearing. If a party's final damage request amount is different from what the party requested in an earlier pleading, then these new final damage requests, as well as the parties' original requests as specified in their pleadings, should be considered during the panel's deliberations and reflected in the award.

## Rendering the Award

Arbitrators must render an award as soon as possible. FINRA Rule 12904 provides that arbitrators should endeavor to render an award within 30 business days from the date the record is closed. Pursuant to FINRA Rule 12608, the panel will decide when the record is closed.

## Form of the Award

FINRA Rule 12904 also requires that all awards must be in writing and signed by a majority of the arbitrators. All awards rendered are final and are not subject to review or appeal within FINRA. FINRA staff provides the panel with an Award Information Sheet prior to a hearing. This document contains a number of questions about the hearing. By answering all of the questions on the Award Information Sheet, the panel ensures that it has considered all necessary items to enter an award.

FINRA staff will prepare an award based on the information in the Award Information Sheet. Arbitrators should review carefully the award to ensure that it is accurate, and that all issues have been clearly decided before signing it. All FINRA awards are publicly available in the FINRA Arbitration Awards Online Database.

All awards must include the following:

- the names of the parties;
- the names of parties' representatives, if any;
- an acknowledgement by the arbitrators that they have each read the pleadings and other materials filed by the parties;
- a summary of the issues, including the type(s) of any security or product, in controversy;
- the damages and other relief requested;
- the damages and other relief awarded;
- a statement of any other issues resolved;
- the allocation of forum fees and other fees allocable by the panel;
- the names of the arbitrators;
- the date the claim was filed and the award rendered;
- the number and dates of hearing sessions;
- the location of the hearings; and
- the signatures of the arbitrators.

Awards do not have to be unanimous. The rules provide that a majority of the panel must agree with the award and sign the final award document. An arbitrator who disagrees with the award may note the dissent.

Copyright 2017 FINRA, Inc. All Rights Reserved.

# Explained Decisions

FINRA Rule 12904 provides that the parties may **require** the arbitrators to write an explained decision. If the parties submit a joint request for an explained decision at least 20 days before the first scheduled hearing date, the chairperson is required to draft an explained decision and will receive an additional honorarium of $400. The explained decision is a fact-based award stating the general reason(s) for the panel's decision. Arbitrators are not required to include legal authorities and/or damage calculations in the decision.

Absent a joint request from the parties for an explained decision, arbitrators may still include a written decision to be published within the body of the award if they believe that an explanation for the award would benefit the parties. However, if the panel decides on its own to write an explained decision, or at the request of only one party, then no panel member will receive an honorarium for writing the decision.

Note that an award granting a motion to dismiss must be accompanied by a written explanation under FINRA Rule 12504(a), as must an award granting expungement of customer dispute information under FINRA Rule 12805. For more information on writing an explained decision, view our training course available online.

# Types of Remedies

Depending upon the relief parties request, there are several types of remedies arbitrators may consider. If the panel is satisfied by a preponderance of the evidence that the respondent is liable for the alleged loss, the panel should determine an appropriate remedy. Remedies may include:

## Actual Damages and/or Statutory Damages

Actual damages, sometimes called compensatory damages, are a monetary sum required to compensate a party for their loss. These include:

### Net Out-of-Pocket Losses

The calculation of a claimant's net out-of-pocket losses varies depending on whether the panel finds the wrongful conduct involves one or more specific trades or the management of an entire account. For specific trades, net out-of-pocket loss is the purchase price of the security plus commissions minus the total of the value of the security on the relevant date plus dividends or interest received. For wrongful conduct involving an entire account, net out-of-pocket losses are calculated by taking the beginning account value, plus money and securities deposited, minus money and securities withdrawn, less account value on the relevant date. Arbitrators should look to the parties for instructions on these issues.

In addition, some claimants may argue that to award "full compensatory damages" it is necessary to look beyond a claimant's net out-of-pocket loss. These "special" or consequential damages might include:

- lost profits in the form of dividends on stocks sold because of wrongdoing;
- taxes the claimant incurred because of the wrongdoing;
- loss of available funds in the claimant's business;
- loss of financing; and
- commissions paid.

### Benefit of the Bargain

The benefit of the bargain measure seeks to give the claimant the expected value of the investment. For example, the claimant's measure of damages would be the amount the investment would have been worth if the respondent's misrepresentation had been true, less what the investment is actually worth. The difficulty with applying the benefit of the bargain measure of damages is determining, with some specificity, the profits that the claimant would have reasonably received.

### Well-Managed Portfolio Account

This measure of damage allows the claimant to recover the difference between what the claimant's account made or lost versus what a well-managed account, given the investor's objectives, would have made during the same time period.

### Statutory Damages

Sometimes, a claim will be based upon a statute that explains how damages should be calculated. If a claim is based upon such a statute, the panel should look to the parties for guidance on how the law requires damages to be calculated.

## Other Remedies

### Rescission

Rescission is designed to place the claimant in the same position occupied before the wrongful transaction. It may include the return of the securities at issue.

### Disgorgement

The arbitration panel may require the respondent to disgorge profits or commissions. The goal of disgorgement is to make the wrongdoing unprofitable

and therefore deter the wrongdoing. Disgorgement might be available even where the claimant has not suffered net out-of-pocket losses.

**Specific Performance**

Specific performance requires precise fulfillment of a legal or contractual obligation when monetary damages are inappropriate or inadequate. If the arbitrators determine that specific performance is an appropriate remedy for a case, the award should be specific and clear with respect to:

- the action to be taken;
- the individual who will take the action; and
- if appropriate, when the action will take place.

For example, a panel might determine that rescission of a transaction or agreement is the only way to place the parties back in the position they were before the wrongdoing. If the arbitrators award damages and the claimant has not yet sold the securities, the award should direct what happens to the securities—whether the claimant retains them, sells them, or returns them to the firm, and under what conditions.

**Injunctive or Permanent Relief Available in Industry Cases**

Temporary Injunctive Relief: Pursuant to FINRA Rule 13804, parties who want a temporary injunction must file for such relief in court. The only related relief available in arbitration at FINRA is for a permanent injunction.

Permanent Relief: FINRA Rule 13804 provides the legal standard an arbitration panel should apply when deciding a request for a permanent injunction. The panel should apply the choice of law as indicated in the parties' agreement, or the law of the state where the events occurred, if the parties do not have an agreement.

Under FINRA Rule 13804, once the panel has heard all evidence on the request for a permanent injunction, it may prohibit the parties from seeking an extension of a court-issued temporary injunction. Arbitrators do not have the authority to modify or dissolve a court's order. However, arbitrators may order the parties to jointly move to modify or dissolve the temporary injunction. If a panel's order conflicts with a pending court order, the panel's order will become effective when the court's order expires.

**Requests to Include Interest as Part of the Award**

If a party requests the panel to include interest as part of the award, the panel should review the following issues:

- statutory or contractual basis that allows interest to be awarded;
- amount of or rate of interest;
- date interest begins; and
- date interest ends.

The interest rate can vary by jurisdiction and case. Some states specify the legal rate of interest that may be awarded in legal matters. Other jurisdictions use Internal Revenue Service rates or those on treasury bills. In some cases, panels select the rate of interest the broker applies to its own customers for outstanding debts. In general, when awarding interest a panel should apply a reasonable rate that is based on the facts of the case.

With respect to when interest begins to accrue, the arbitrators will generally apply interest from the date a contract was breached or the time the panel determines that a debt became due or payable.

**Requests to Include Punitive Damages as Part of the Award**

Upon a party's request, arbitrators may consider punitive damages as a remedy if a respondent has engaged in serious misconduct that meets the standards for such an award.

Punitive damages are not intended to right a wrong, but are intended to punish the wrongdoer and to deter future wrongdoing. The standards for awarding punitive damages vary from state to state. While most states permit punitive damages only for conduct that is malicious or intentional, some states permit punitive damages for reckless indifference to the rights of others or for gross negligence.

If punitive damages are awarded, the arbitrators should clearly specify what portion of the award is intended as punitive damages. In addition, arbitrators should include in the award the basis for awarding punitive damages. If the panel needs additional information to determine the basis for awarding punitive damages, it should ask the parties to brief the issue to help determine whether both factual and legal bases exist for such an award.

# Awarding Sanctions, if Any

If the panel issues sanctions, pursuant to FINRA Rule 12212, it must include this information in the award. Arbitrators should not make sanctions against parties payable to FINRA as FINRA is not a party to the proceeding. Awards containing monetary sanctions payable to FINRA are inappropriate. Please see the section of this Guide on Issuing Sanctions for additional information.

# Awarding Fees and Costs

Arbitrations involve a number of fees and expenses, and the panel decides which party must pay these costs. The panel may ask FINRA staff to provide a summary of all fees that have been incurred as a result of the arbitration, as well as payments made by each party. This section addresses separately the following fees and costs: forum fees; attorneys' fees; witness and production fees; and other case-related costs.

## Forum Fees

A party must remit a filing fee when it files a claim, counterclaim, third party claim or cross claim. The cost of the filing fee is based on the amount in dispute and the number of arbitrators assigned to hear a case. Schedules of fees can be found in FINRA Rules FINRA Rules 12900 through 12903, and FINRA Rules 13900 through 13903. Also see the Award Information Sheet for guidance on allocating hearing session fees.

FINRA may temporarily waive fees if the party shows that it is unable to pay the filing fee and/or hearing session deposit. However, FINRA will also inform the party that the panel may still assess arbitration costs at the close of the case.

The total amount of forum fees the arbitrators may assess against the parties is based on the number of hearing sessions needed to complete the hearing. A hearing session includes any meeting between the parties and arbitrator(s) that lasts four hours or less. For example, if a hearing runs two days—eight hours each day—the parties are subject to an assessment of four hearing sessions.

The panel has the discretion to assess forum fees among the parties. In deciding how to allocate the forum fees, arbitrators may consider the following factors:

- temporary waivers of filing fees or hearing session deposits granted because of financial hardship;
- actions by any party that may have prolonged the length of the hearing;
- the legitimacy of arguments made or positions taken;
- disruptions or time delays caused during hearing sessions; and
- the ultimate merits of the case (*i.e.*, who prevailed or substantially prevailed).

Arbitrators should remind the parties periodically that they may be assessed forum fees at the conclusion of the hearing. Although liability may be considered when deciding how to assess fees, it is not the only factor when deciding to assess forum fees.

If the panel elects to assess a postponement fee in its award, it should consider the same factors used in assessing forum fees when assessing this fee. For example, if a party requested and was granted a postponement because another party failed to produce documents, the panel might consider assessing the fee against the non-producing party in the award.

Copyright 2017 FINRA, Inc. All Rights Reserved.

**Attorneys' Fees**

You may award attorneys' fees when, for example: 1) the parties' contract includes a clause that provides for attorneys' fees; 2) the governing law provides for attorneys' fees when all of the parties request or agree to such fees; 3) the fees are required or permitted as part of a statutory claim; or 4) as otherwise provided by law. FINRA does not provide guidance on whether arbitrators may award attorneys' fees. The law may vary widely and may require interpretation that FINRA, as a neutral forum, will not provide. In addition, you should not conduct your own legal research.

If a party requests the recovery of attorneys' fees and you have questions regarding the panel's authority to award such fees, you should request briefs from the parties that identify the basis for awarding attorneys' fees.

If the panel determines that a party has a right to recovery, that party must prove the amount to the satisfaction of the panel. The panel may permit testimony or evidence to be submitted during the case-in-chief, or in post-hearing written submissions.

**Witness and Production Fees**

Occasionally, parties may request that the arbitrators direct reimbursement for expenses of a witness, and the costs associated with producing documents. When reviewing witness fees, arbitrators should follow the rule in the applicable jurisdiction. If necessary, the panel should ask the parties to brief the issue.

Usually, each party is responsible for producing and copying documents that they intend to use. According to [FINRA Rule 12513](#) the party requesting the production of documents shall bear all reasonable costs of production, unless the panel directs otherwise. On larger cases, a party might ask that the requesting party come to the location of the documents and copy what is needed.

If the parties cannot agree on who should bear such fees, the panel must find a reasonable solution. After reaching a decision, the panel should memorialize it in an order or the award.

**Other Case-Related Costs**

The parties may request that the arbitrators direct reimbursement for other expenses, such as:

- cost of transcribing the record;
- travel costs—when the parties have traveled to the hearing and a party has caused the case not to go forward (last-minute postponement request);
- expert fees; and
- teleconference fees.

FINRA may also alert the panel to outstanding administrative costs such as:

- photocopying charges;
- mailing charges;
- unpaid postponement fees; and
- unpaid administrative costs.

A panel may assess each of these fees and costs in its award applying equitable principles.

**Member Surcharge and Process Fees**

Although arbitrators generally have wide latitude in determining how to assess fees and costs against the parties, they do not have discretion in allocating member surcharges and process fees.

Rules 12901 and 12903 require a brokerage firm to pay a surcharge and process fees when the firm: 1) files a claim; 2) is named as respondent in a claim, counterclaim, cross claim or third party claim; or 3) employed an associated person at the time of the dispute who is named as a respondent in a claim, counterclaim, cross claim or third party claim.

Arbitrators may not reallocate any of the member surcharge or process fees paid by a firm to another party.

**Arbitration Award Offsets**

Absent specification to the contrary in the award, when arbitrators order opposing parties to make payments to one another, the monetary awards shall offset, and the party assessed the larger amount shall pay the net difference.

## Expungement of Customer Dispute Information

**Central Registration Depository**

The Central Registration Depository (CRD®) is an online registration and licensing system that contains administrative and disclosure information about registered securities firms and brokers. FINRA maintains and operates the CRD system pursuant to FINRA rules and an agreement between FINRA and the North American Securities Administrators Association (NASAA), an association whose members include state and other securities regulators in the United States, as well as other securities regulators in North America.

The CRD system is used by members of the securities industry, state and federal regulators and self-regulatory organizations (SROs). FINRA works with NASAA, the Securities and Exchange Commission (SEC), other members of the regulatory

community and brokerage firms to ensure that information in the CRD system is accurate and complete.

The CRD system has several important uses:

- Investors rely on CRD information, most of which is available to them through FINRA BrokerCheck®,[4] when making decisions about whether to do business with a particular broker or brokerage firm.

- Regulators use CRD to fulfill their regulatory responsibilities.

- Regulators also use the CRD system as a regulatory tool (*e.g.,* to help identify trends or potential threats to investor protection).

- Brokerage firms rely on CRD when making hiring decisions.

**Reporting Requirements**

In general, the information on the CRD system is submitted by registered securities firms and regulatory authorities in response to questions on the uniform registration forms. These forms are designed to elicit and collect administrative and disclosure information that is relevant to regulators in connection with their licensing and enforcement activities. Securities firms and regulatory authorities may report a variety of disclosure events to the CRD system, including civil judicial actions, criminal matters, customer disputes (customer complaints, arbitrations and court actions), employment terminations, internal reviews *(i.e.*, a review of a broker's conduct by his or her former firm), investigations, financial matters and regulatory actions.

Brokers who seek to expunge disclosure events from their CRD records generally look to remove a customer dispute, employment termination or internal review. For example, when a broker is named as a respondent in, or is the subject of, a customer-initiated arbitration proceeding, that event must be reported on the broker's Form U4. Once the event is reported, it is recorded on the broker's CRD record. To protect the broker's reputation, brokers may seek to have any reference to the arbitration removed from their CRD record. The process of permanently removing this information is known as "expungement."

**Role of Arbitrators in Expungement Cases**

Expungement is an extraordinary remedy that arbitrators should recommend only under appropriate circumstances. Arbitrators should recommend expungement of customer dispute information only when it has no meaningful investor protection or regulatory value. Once information is expunged from the CRD system, it is permanently deleted

---

[4] Although public investors cannot access the CRD system, most of the information submitted to CRD is made publicly available through FINRA BrokerCheck. BrokerCheck is a free online tool that provides the public with information on the professional background, business practices and conduct of current and former FINRA registered securities firms and brokers.

and no longer available to the investing public, regulators or prospective broker-dealer employers.

Arbitrators have a unique, distinct role when deciding whether to recommend expungement of customer dispute information from a broker's CRD record. Customer dispute information includes allegations of misconduct made by customers against brokers in complaints, arbitrations and court actions. In making these determinations, arbitrators must consider the importance of maintaining the integrity of the information in the CRD system.

Given this significant role, arbitrators should ensure they have all the information necessary to make an informed and appropriate recommendation on expungement. Arbitrators should request any documentary or other evidence they believe is relevant to the expungement request. This is particularly important in cases that settle before an evidentiary hearing or in cases where only the party requesting expungement participates in the expungement hearing.

**Expungement Rules**

### Rule 2080: Grounds for Expungement

FINRA rules provide a framework for arbitrators to follow when considering requests to expunge customer dispute information. The framework is intended to ensure that arbitrators recommend expungement only when the information is found to have no meaningful investor protection or regulatory value.

Rule 2080 establishes procedures to ensure that expungement occurs only when the arbitrators find and document one of its narrow grounds:

1. the claim, allegation or information is factually impossible or clearly erroneous;

2. the registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds; or

3. the claim, allegation or information is false.

The panel must indicate in the arbitration award which of the Rule 2080 grounds for expungement serves as the basis for expungement. If the award does not contain this information, parties must name FINRA as a party in any court proceeding seeking or confirming expungement relief. FINRA will expunge customer dispute information from CRD only by court order pursuant to Rule 2080(a). If the arbitrators recommend expungement based on the specific findings described in Rule 2080, FINRA may waive its right to be named as a party to the judicial expungement proceeding, thus waiving its right to oppose the request.

### Rule 2081: Prohibited Conditions Relating to Expungement

Effective July 30, 2014, FINRA Rule 2081 prohibits firms and registered representatives from conditioning settlement of a customer dispute on—or otherwise compensating a customer for—the customer's agreement to consent to, or not to oppose, the firm's or representative's request to expunge such information from CRD. Arbitrators must be aware of the new rule when they conduct expungement hearings. Please see *Regulatory Notice 14-31*.

### Rule 12805: Expungement of Customer Dispute Information

FINRA Rule 12805 provides enhanced safeguards designed to make sure that arbitrators have the opportunity to consider the facts that support or weigh against a decision to recommend expungement, and ensure that expungement occurs only when the arbitrators find and document one of the narrow grounds specified in FINRA Rule 2080.

Before ruling on requests to recommend expungement of customer dispute information under Rule 2080, the panel must complete the following under Rule 12805:

1. Hold a recorded hearing session (by telephone or in person) regarding the appropriateness of expungement. This requirement also applies to cases administered under Rules 12800 and 13800 (Simplified Arbitration) even if a customer or claimant did not request a hearing on the merits.

2. In cases involving settlements, review settlement documents and consider the amount of payments made to any party and any other terms and conditions of the settlement.

3. Indicate in the arbitration award which of the Rule 2080 grounds for expungement serves as the basis for recommending expungement and provide a brief written explanation of the reasons for the panel's finding.

4. Assess all forum fees for hearing sessions in which the sole topic is the determination of the appropriateness of expungement against the parties requesting expungement relief.

**Settled Cases**

Settled cases involving expungement requests present unique challenges. Investors often stipulate to the expungement request or declare that they are not opposed to expungement and rarely attend the required expungement hearing. Typically, because the case has settled, there has been no hearing on the merits and, thus, no testimony or documentary evidence presented before the parties reach settlement. If a hearing on the merits has not been held, arbitrators must convene a hearing on the record to specifically address expungement. The broker or firm requesting expungement must demonstrate to the arbitrators that the facts provide a basis for expungement under one of the grounds in Rule 2080.

Copyright 2017 FINRA, Inc. All Rights Reserved.

It is important to allow customers and their counsel to participate in the expungement hearing in settled cases if they wish to. Specifically, arbitrators should:

1. allow the customer and their counsel to appear at the expungement hearing;
2. allow the customer to testify at the expungement hearing;
3. allow counsel for the customer or a *pro se* customer to introduce documents and evidence at the expungement hearing;
4. allow counsel for the customer or a *pro se* customer to cross-examine the broker and other witnesses called by the party seeking expungement; and
5. allow counsel for the customer or a *pro se* customer to present opening and closing arguments if the panel allows any party to present such arguments.

When the investor does not attend the hearing, arbitrators will hear only the position of the party requesting expungement. Even if the opposing party does not appear at the expungement hearing, the party seeking expungement must still demonstrate to the arbitrators that expungement would be appropriate under one of the grounds in Rule 2080. The panel should not rely on the fact that the claimant did not appear at the expungement hearing as a factor weighing in favor of or against recommending expungement. In the absence of an opposing party, arbitrators should ask questions of the broker or firm and request any other evidence they believe is relevant to the expungement request.

Arbitrators must critically evaluate the settlement and determine whether it raises any concerns. Particularly, arbitrators should question whether expungement is appropriate in situations where the broker, or the firm, has agreed to pay a large monetary settlement—a settlement amount beyond a nuisance value. Arbitrators should evaluate whether a financial settlement raises questions about some culpability on the part of the broker or firm. If arbitrators nevertheless recommend expungement, they should explain in their written rationale why expungement is still appropriate despite a large settlement.

Arbitrators should also inquire and fully consider whether a party conditioned a settlement of arbitration upon agreement not to oppose the request for expungement. This is particularly important in cases where the investor does not participate in the expungement hearing or the requesting party indicates that the investor does not oppose the expungement request.

Effective July 30, 2014, Rule 2081 prohibits firms and registered representatives from conditioning settlement of a customer dispute on—or otherwise compensating a customer for—the customer's agreement to consent to, or not to oppose, the firm's or representative's request to expunge such information from CRD. This prohibition applies to written and oral agreements and to agreements entered into during the course of settlement negotiations, as well as to any agreement entered into, separate from such negotiations. The rule also precludes such agreements even if the customer offers not to oppose expungement as part of negotiating a settlement agreement, and applies to any settlements involving customer disputes, not only to those related to arbitration claims. In addition, Rule 2081 precludes the firm or broker, following

Copyright 2017 FINRA, Inc. All Rights Reserved.

settlement of the underlying customer dispute, from compensating the customer in return for not opposing the expungement request.

---

A stipulated award that contains a prohibited condition casts doubt on the integrity of the process. Arbitrators should not accept a stipulated award that contains documentation of an offer that would violate Rule 2081. Arbitrators who learn of such prohibited conditions should review FINRA's information relating to Disciplinary Referrals.

---

As with all requests seeking expungement of customer dispute information, arbitrators must affirmatively find and document one or more of the grounds under Rule 2080 and satisfy the procedural requirements under Rule 12805 before recommending expungement.

**Expungement-Only Cases**

In some instances, an associated person will file an arbitration claim against a member firm solely for the purpose of seeking expungement, without naming the customer in the underlying dispute as a respondent. To ensure that customers know about the expungement request, arbitrators should order the associated persons to provide a copy of their Statement of Claim to the customer(s) involved in the underlying arbitration.

It is particularly important to note that without this directive from the arbitrators, the customer(s) may not even be aware that an expungement claim is pending regarding their prior dispute. Additionally, notice provides the customer(s) with the opportunity to advise the arbitrators and parties of their position on the expungement request, which may assist arbitrators in making the appropriate finding under Rule 2080. The position of the customer(s) can be made known in writing or through participation in the expungement hearing.

**BrokerCheck Report Review**

Arbitrators should ask the broker seeking expungement (or the party seeking expungement on behalf of the broker) to provide a current copy of the broker's BrokerCheck report. Arbitrators should review the information on the report that the broker is seeking to expunge. Arbitrators should also pay attention to the "Disclosure Events" section when considering whether expungement is appropriate. This section shows the broker's additional disclosures, if any, that arbitrators should consider before recommending expungement. Specifically, this section shows all regulatory actions, civil judicial actions, investigation disclosures, customer complaints, criminal matters, financial matters and arbitrations and court actions in which a broker has been involved. For example, a disclosure event may include regulatory information that may be relevant to the matter that is the subject of the expungement request. In such cases, arbitrators should consider the regulatory information when determining whether an

expungement recommendation is appropriate. Reviewing the report allows arbitrators to consider the expungement request in the context of the broker's entire securities industry employment record. Additionally, arbitrators should ask whether the broker has other pending expungement requests. If a broker is requesting expungement in more than one case, arbitrators should consider the circumstances under which multiple requests are being made. This may be a factor in their decision to recommend expungement.

**Awards and Expungements**

If, after considering the required factors, a panel decides that expungement is appropriate in a customer dispute, the record will be expunged from the CRD system only if the panel clearly identifies and documents in the award one or more of the standards under Rule 2080, and the award is confirmed by a court of competent jurisdiction. Arbitrators must affirmatively find and document one or more of the grounds under Rule 2080; these findings cannot be implied in the award.

Rule 12805 requires arbitrators to indicate which of the Rule 2080 grounds for expungement serves as the basis for expungement and provide a brief written explanation of the reasons for recommending expungement under Rule 2080. The written explanation should be fact-based and should clearly connect the arbitrators' reasons for recommending expungement to the Rule 2080 expungement standard they cited. Inclusion of legal authorities and damage calculations is not required. The panel must assess forum fees for hearings sessions held solely for the purpose of considering expungement against the parties requesting expungement relief.

If a party requests expungement, arbitrators must provide their findings on expungement in the Award Information Sheet or the Award Information Sheet – Sole Topic is Determination of Expungement of Customer Dispute Information they complete at the end of the case. In some cases, FINRA staff may ask for additional information to satisfy the requirements under Rules 2080, 2081 and 12805. Arbitrators should be responsive to staff inquiries.

## Expungement in Intra-Industry Disputes

Rules 2080, 2081 and 12805 do not apply to intra-industry disputes, unless the information to be expunged involves customer dispute information. For example, a broker might request expungement of the reason for termination (*e.g.*, failure to meet production standards) reported on his or her CRD record by a former employer. Since this request does not involve customer dispute information, arbitrators may recommend expungement of this information from CRD without addressing the standards set forth in Rule 2080 or the procedural requirements under Rule 12805. FINRA will expunge the referenced information if the award is confirmed by a court of competent jurisdiction.

If the arbitrators recommend expungement of non-customer dispute information and also determine that the information is defamatory in nature, FINRA will expunge the information without a court order. When requesting expungement in these situations, parties should present evidence to the arbitrators that demonstrates that the information in the broker's CRD record is defamatory in nature, thereby portraying the broker in a negative light. If the arbitrators are satisfied that the information is defamatory in nature, they must clearly state in the award that they are recommending expungement based on the defamatory nature of the information in the CRD system. Arbitrators, however, are not required to find or to state explicitly in the award that all elements required to satisfy a claim in defamation under governing law have been met.

## Parties Making Second Requests for Expungement

When an arbitration panel has issued an award denying a broker's expungement request, the broker may not request expungement in another arbitration case. Therefore, arbitrators should ask a party requesting expungement whether an arbitration panel previously denied expungement of the customer dispute information at issue. If there has been a prior denial, the arbitration panel must deny the expungement request and contact FINRA staff for assistance.

## Additional Resources

Expungement online training
*The Neutral Corner*, Volume 2—2010
*The Neutral Corner*, Volume 1—2012
Notice to Arbitrators and Parties on Expanded Expungement Guidance
*The Neutral Corner*, Volume 4—2013

# PART ELEVEN: AFTER THE CASE CLOSES

## Avoiding Party Contact

Communications with the parties should be scrupulously avoided even after the proceedings are concluded. If a party contacts an arbitrator after the hearing closes, the arbitrator should notify FINRA staff immediately. A party should not directly contact arbitrators under any circumstances. Arbitrators should contact FINRA staff immediately if questioned about a case, asked to testify, asked to sign an affidavit, or threatened with a lawsuit by a party.

### Party Submissions to Arbitrators After a Case Closes

FINRA Rule 12905 provides that parties may not submit documents to arbitrators in cases that have been closed except under the following limited circumstances: 1) as ordered by a court; 2) at the request of any party within 10 days of service of an award or notice that a matter has been closed, for typographical or computational errors, or mistakes in the description of any person or property referred to in the award; or 3) if all parties agree and submit documents within 10 days of service of an award or notice that a matter has been closed. Any documents, if submitted, must be sent through FINRA.

## Maintaining Confidentiality

Even after a decision is reached in the case, arbitrators have a continuing obligation to maintain confidentiality. Therefore, arbitrators should not discuss what occurred during the hearing with individuals outside the hearing room, including friends, family members and colleagues. All matters relating to the arbitration (including the pleadings, motions, evidence and panel deliberations) are confidential. Discussions held during executive sessions must also remain confidential. FINRA will distribute the award at the end of the case and will make it available on its website; this is not the responsibility of the arbitrators.

Arbitrators should keep the following in mind when observing confidentiality guidelines:

- Arbitrators generally enjoy quasi-judicial privilege for their deliberations and thought processes. However, discussing the basis for the panel's award with an outside person may waive this immunity for the arbitrators on the case.
- Always assume someone is listening. Discussions on elevators, in rest rooms and in restaurants can be overheard.

Maintaining confidentiality is extremely important. By discussing a case, a panel member may waive the right to arbitral immunity for him or herself as well as for the other panel members.

Copyright 2017 FINRA, Inc. All Rights Reserved.

**Arbitrator Immunity**

Arbitrators have immunity from civil liability that may arise out of their conduct while serving as arbitrators. With respect to testimony, arbitrators generally have a quasi-judicial privilege from discussing the basis for their decisions. If arbitrators are named in an action or proceeding relating to their service on a case, FINRA will provide legal counsel and indemnify arbitrators. However, arbitrators are not immune from liability for misconduct that is punishable by law, such as fraud or corruption. Arbitrators can be liable for acts they commit while serving as an arbitrator that are not related to their role as arbitrators.

Another important aspect of maintaining confidentiality involves the disposal of materials and document retention. Arbitrators are not required to retain case-related documents after an evidentiary hearing is concluded or a case settles. However, FINRA recommends that arbitrators retain files for a short period after the conclusion of a case to address any motions filed after a case closes. If arbitrators do not wish to retain case-related documents, they should discard them in a manner that is consistent with preserving the confidentiality of the proceedings.

## Evaluating Arbitrators

As part of FINRA's ongoing effort to improve the arbitration process, FINRA encourages arbitrators to complete the Arbitrator Experience Survey at the conclusion of every case. FINRA also asks parties to evaluate the arbitrators on their professionalism and conduct throughout the proceeding. FINRA staff evaluates arbitrators' performance at the end of the case.

## Making Disciplinary Referrals

During the course of the hearing, arbitrators may hear evidence of serious wrongdoing that they believe warrants further investigation and possible disciplinary action. FINRA Office of Dispute Resolution relies on arbitration panels to refer appropriate matters for investigation. Arbitrators have sole discretion to make a disciplinary referral based on the evidence.

In general, arbitrators should refer matters that are of a regulatory interest.
A disciplinary referral is not a recommendation that discipline be imposed, but a recommendation that FINRA conduct an investigation to determine whether disciplinary action is appropriate.

### Post-Case Referral

Under Rule 12104 at the conclusion of an arbitration, any arbitrator may refer to FINRA for investigation any matter or conduct that has come to the arbitrator's attention during

the arbitration, which the arbitrator has reason to believe may constitute a violation of the rules of FINRA, the federal securities laws or other applicable rules or laws.

**Mid-Case Referral**

Rule 12104 also allows an arbitrator to make disciplinary referrals during an ongoing arbitration in very limited circumstances. Any arbitrator may refer to the Director, any matter or conduct that has come to the arbitrator's attention during a hearing, which the arbitrator has reason to believe poses a serious threat, whether ongoing or imminent, that is likely to harm investors unless immediate action is taken. Examples of such a threat would include evidence of a Ponzi scheme or money laundering. You should not, however, make referrals during an arbitration based solely on allegations in the statement of claim, counterclaim, cross claim or third party claim. Dispute Resolution routinely provides copies of arbitration claims and other pleadings to other FINRA divisions to analyze for fraudulent securities activity or other possible rule violations. Thus, mid-case referrals based only on the pleadings are not necessary to apprise those divisions of possible wrongdoing. However, an arbitrator may make a mid-case referral based on evidence or testimony heard during the hearings.

If you believe that such a threat exists but the case is about to conclude, then you should wait until the case concludes to make a post-case referral as long as doing so would not materially compromise investor protection. For example, if during the third of four consecutively scheduled hearing days you learn of a serious threat that meets the criteria of the rule and anticipate that the remaining tasks to close the hearing will be completed shortly after the last hearing session on the fourth day, you could defer making the mid-case referral to avoid a significant delay to the conclusion of the case. In deciding whether to delay making the referral, you should weigh the potential harm a mid-case referral could have on the claimants (e.g., delay, additional expense) against the possible harm to non-party investors that a brief delay could cause.

Only the Director is authorized by Rule 12104 to evaluate the mid-case referral to determine whether it should be forwarded to other FINRA divisions to begin a regulatory investigation. Regardless of whether the mid-case referral is forwarded, FINRA will disclose to the parties that an arbitrator made a mid-case referral to the Director. After being notified of a referral, it is possible that a party may request that the referring arbitrator(s) recuse themselves. The rule requires that any such request be made no later than three days after FINRA notifies the parties of the referral or the party forfeits the right to request recusal of the referring arbitrator(s).

An arbitrator who is the subject of a recusal request because of a mid-case referral would not be required to grant the party's request. Consistent with any other recusal request, an arbitrator challenged because of a mid-case referral would be required to make the recusal decision in accordance with the Code and Code of Ethics.

If the arbitration panel determines a referral is appropriate, it should complete the Arbitrator Disciplinary Referral Form and submit it online or forward it to the assigned staff person.

A single arbitrator may initiate a disciplinary action absent the consent of the panel. However, FINRA encourages arbitrators to discuss the matter with their co-panelists before initiating a referral.

Please see *Regulatory Notice 14-42* and FINRA's online Basic Arbitrator Training for more information about mid-case referrals.

## Motions to Vacate an Award

Motions to vacate—if any—must be made through the courts. Typically, parties challenge awards on the grounds of arbitrator partiality. An award may also be challenged because of an arbitrator's conduct, such as failing to disclose relationships with the parties or counsel, exceeding authority, prejudicial conduct at the hearing, ambiguities or mistakes on the face of the award, corruption or fraud, unreasonable refusal to hear evidence or postpone a hearing and manifest disregard of the law.

In motions to vacate alleging arbitrator partiality or misconduct, arbitrators may be called to provide testimony about their conduct in an arbitration, or about an alleged conflict of interest. If an arbitrator is contacted in this context, the arbitrator should notify FINRA staff immediately and not discuss the matter with the party.

Copyright 2017 FINRA, Inc. All Rights Reserved.

# PART TWELVE: SIMPLIFIED CASES

## Frequently Asked Questions for Simplified Cases

### What is a simplified case?

Simplified cases involve claims of $50,000 or less, not including interest and expenses. For customer cases under Rule 12800, a single public arbitrator will be appointed to decide the case based on the pleadings and other materials submitted by the parties. If the case involves industry parties under Rule 13800, a single, non-public arbitrator will be appointed to decide the case based on the pleadings and other materials submitted by the parties. No hearing will be held in simplified cases.

### What Code of Arbitration Procedure rules apply to these cases?

Rule 12800 of the Customer Code and Rule 13800 of the Industry Code govern simplified cases.

### How are arbitrators appointed for simplified cases?

For simplified cases under Rule 12800, one public arbitrator will be appointed to decide the case. The single arbitrator will be appointed from the FINRA chairperson roster using the Neutral List Selection System (NLSS), unless the parties agree in writing otherwise. For simplified cases under Rule 13800, one non-public arbitrator from the chairperson roster will be appointed using NLSS.

### Can the arbitrator request a hearing?

No, the arbitrator cannot request a hearing.

### Can the parties request a hearing?

In a customer case under Rule 12800, the customer may request a hearing. For industry cases under Rule 13800, the claimant may request a hearing.

### Can the arbitrator request additional information before deciding the case?

The arbitrator may ask the parties to submit additional information before deciding the case. The arbitrator may ask FINRA staff to request the information from the parties, and the parties will have 10 business days to respond to the arbitrator's request.

**Can the parties request discovery?**

The parties may request documents and other information from each other under Rule 12800 or Rule 13800. All requests for documents and other information must be served on all other parties, and filed with FINRA, within 30 days from the date that the last answer is due. Any response or objection to a discovery request must be served on all other parties and filed with FINRA within 10 days of the receipt of the requests. The arbitrator will resolve any discovery disputes.

If parties in simplified cases choose to conduct discovery, they should send a written communication advising the assigned FINRA staff person and all other parties that they are requesting that the assigned arbitrator allow time for the completion of discovery and the filing of additional submissions, if any.

**Does the Discovery Guide apply to simplified cases?**

For customer disputes only, the Discovery Guide outlines documents that the parties should exchange without arbitrator or staff intervention. The Discovery Guide is not intended for use in simplified arbitrations under Rule 12800. However, the arbitrator may, in his or her discretion, choose to use relevant parts of the Discovery Guide in a manner consistent with the expedited nature of simplified proceedings.

**What happens if a party increases the amount claimed to more than $50,000?**

The arbitration will no longer be administered under Rule 12800 or Rule 13800, and the regular provisions of the Codes will apply. If an arbitrator has been appointed, that arbitrator will remain on the panel. If a three-arbitrator panel is required or requested under Rule 12401, the remaining arbitrators will be appointed by the Director in accordance with Rule 12403(c) or Rule 12403(d). If no arbitrator has been appointed, the entire panel will be appointed in accordance with NLSS.

**If a party files a counterclaim for unspecified attorneys' fees and costs, would the parties be precluded from proceeding under the simplified rules?**

A counterclaim requesting only unspecified attorneys' fees and costs would be considered a request for expenses, and it would not be included in the total amount in dispute. Therefore, a counterclaim for attorneys' fees and costs would not raise the total amount in dispute beyond the $50,000 limit, and the case would continue to proceed under the simplified rule.

**What happens when an expungement request is made in a simplified case?**

In simplified cases, a hearing is normally held only at the request of a customer or claimant. However, Rules 12805 and 13805, which outline procedures for the expungement of customer dispute information under Rule 2080, require arbitrators to hold a hearing session to determine the appropriateness of an expungement request.

Therefore, the arbitrator in a simplified case must hold a hearing before deciding an expungement request, even if the customer or claimant did not request a hearing. The arbitrator will assess any forum fees for hearing sessions on a request for expungement against the parties making the request.

**Are there special procedures for cases involving a promissory note?**

If the respondent does not file an answer in a case involving a promissory note—regardless of the amount in controversy—FINRA will apply the simplified procedures in Rule 13800(d). Similar to simplified cases involving other types of disputes, the simplified discovery procedures outlined in FINRA Rule 13800(d) will apply, and the single arbitrator assigned to the case will decide the case based on the pleadings and other materials submitted by the parties. No hearing will be held.

The arbitrator may ask the parties to submit additional information before deciding the case. FINRA staff will request the information from the parties, and the parties will have 10 business days to respond to the arbitrator's request. When the arbitrator is ready to make a decision, the arbitrator should complete the Promissory Note Case Checklist (rather than the Simplified Case Checklist).

If the associated person in a case involving a promissory note files an answer (but does not seek any additional relief or assert any counterclaims or third party claims), regular discovery procedures will apply and, regardless of the amount in controversy, the single arbitrator will hold a hearing.

Arbitrators may review *Regulatory Notice 09-48* for further guidance on procedures for promissory note cases.

**Can the parties request an explained decision in simplified cases?**

Parties will not be able to require explained decisions in simplified arbitrations that are decided without a hearing. Explained decisions are not appropriate in simplified arbitrations because of the abbreviated nature of the proceedings.

**How much time does an arbitrator have to render a decision?**

An arbitrator should promptly endeavor to make a decision in a simplified case.

Copyright 2017 FINRA, Inc. All Rights Reserved.

**Are there special forms I need to complete at the end of the case?**

When the arbitrator is ready to make a decision, the arbitrator must complete the Simplified Case Checklist and submit it FINRA. FINRA will then draft an award based on the arbitrator's findings and send it to the arbitrator for review and signature before serving the award to the parties.

For promissory note cases, arbitrators should complete the Promissory Note Case Checklist.

**What is the honorarium for serving on a simplified case?**

FINRA will pay the arbitrator an honorarium of $350 for deciding a simplified case under Rule 12800 or Rule 13800.

## Additional Resource

*Regulatory Notice 09-48*

Copyright 2017 FINRA, Inc. All Rights Reserved.