# EXHIBIT F

WRI VENDING MACHINES, INC.,

Case No.: 14-01450

        Claimant,

vs.

SANTANDER SECURITIES, LLC AND
ORIENTAL FINANCIAL SERVICES CORP.,

        Respondents.

_____/

## AMENDED STATEMENT OF CLAIM

Claimant, WRI VENDING MACHINES, INC., pursuant to the Rules of the Financial Industry Regulatory Authority ("FINRA") and Title 9, U.S.C. §1, et seq., files this claim against Respondents, SANTANDER SECURITIES, LLC and ORIENTAL FINANCIAL SERVICES CORP. and as grounds therefore alleges as follows:

### I. JURISDICTION

1.     Pursuant to Title 9 of the United States Code, §1 et seq. and by reason of their membership in the FINRA and/or their association with a member of the FINRA, the Respondents are required to arbitrate all the claims set forth herein and empower the FINRA arbitrators with the authority to make any award, including an award for all relief sought herein, as required by the FINRA Code of Arbitration Procedure and FINRA Conduct Rules.

### II. THE PARTIES

2.     Claimant, WRI VENDING MACHINES, INC. ("WRI") is a corporation organized and existing under the laws of Puerto Rico and doing business in Dorado, Puerto Rico. Waldemar

Rivera Izquierdo ("Waldemar") is the owner and President of WRI and reference to it and Waldemar may be used interchangeably.

3. Respondent. SANTANDER SECURITIES. LLC ("SANTANDER") upon information. is registered with the United States Securities and Exchange Commission ("SEC") and the Commissioner of Financial Institutions of Puerto Rico, as a securities broker-dealer. SANTANDER is also a member of the Financial Industry Regulatory Authority ("FINRA") and other national securities exchanges and self-regulatory organizations ("SRO's"). SANTANDER is subject to the laws and regulations of the United States. the Commonwealth of Puerto Rico. the FINRA. the SEC and other SRO's. as well as its own internal rules. policies and procedures. At all times relevant and material hereto. SANTANDER conducted business with the Claimants through their principal offices located in Guaynabo, Puerto Rico.

4. Respondent, ORIENTAL FINANCIAL SERVICES CORP. ("ORIENTAL FINANCIAL") upon information, is registered with the United States Securities and Exchange Commission ("SEC") and the Commissioner of Financial Institutions of Puerto Rico. as a securities broker-dealer. ORIENTAL FINANCIAL is also a member of the Financial Industry Regulatory Authority ("FINRA") and other national securities exchanges and self-regulatory organizations ("SRO's"). ORIENTAL FINANCIAL is subject to the laws and regulations of the United States. the Commonwealth of Puerto Rico. the FINRA. the SEC and other SRO s. as well as its own internal rules. policies and procedures. At all times relevant and material hereto. ORIENTAL FINANCIAL

conducted business with the Claimant through their principal offices located in San Juan, Puerto Rico.

5. In August 2013, OFS Securities Inc. was merged with ORIENTAL FINANCIAL with ORIENTAL FINANCIAL continuing as the surviving entity. As such, ORIENTAL FINANCIAL is now responsible for all of OFS Securities Inc.'s liabilities including all liability for the tortious and other wrongful conduct alleged herein. For purposes of this claim, reference to ORIENTAL FINANCIAL shall be deemed to include reference to OFS Securities. Inc.

6. At all times material hereto. Joel Alexis Colon ("Colon") was an employee and/or registered representative of SANTANDER and was acting within the scope of his employment and/or agency.

7. At all times material hereto. Enrique Pascual, Jr. ("Pascual") was an employees and/or registered representative of ORIENTAL FINANCIAL and was acting within the scope of his employment and/or agency.

8. SANTANDER is vicariously liable for the acts and omissions of its employees and its agents. including Colon. by virtue of the doctrine of *respondeat superior* and actual or apparent authority.

9. ORIENTAL FINANCIAL is vicariously liable for the acts and omissions of its employees and its agents, including Pascual. by virtue of the doctrine of *respondeat superior* and actual or apparent authority.

## III. FACTS

### a. Santander recommended a high risk and unsuitable leveraged investment strategy

10. Waldemar is fifty-three years old and is married to Shirley Rivera who is fifty-two years old. They have been married for 37 years and have five children.

11.   Waldemar had never maintained a brokerage account prior to his dealings with SANTANDER and OFS.

12.   Waldemar is the sole principal of WRI which is a vending machine business.

13.   In or about early 2012, Waldemar was contemplating a sale of a majority of his vending machines in an asset sale for approximately $3,200,000.

14.   Waldemar maintained a banking relationship with Santander Puerto Rico ("Banco Santander") over the years. The manager of the Banco Santander branch where Waldemar banked, Jorge Aviles ("Aviles"), introduced Waldemar to Colon who worked for SANTANDER, its broker dealer affiliate.

15.   Prior to the sale of his business, Colon met with Waldemar. Waldemar informed Colon that he was considering a sale of the majority of his vending machines for approximately $3.2 million. Waldemar inquired of Colon regarding the return he could achieve on the proceeds from the sale of his business by investing in safe investments that would serve to preserve his principal while generating income. Colon represented to Waldemar that he could achieve approximately a 6% return tax-free without subjecting his principal to any risk of loss.

16.   Based in part upon Colon's representations, Waldemar sold the majority of his business in March 2012 for approximately $3.2 million. Colon established an account for WRI with SANTANDER (account no. Redacted . In May 2012, Waldemar funded the newly formed account with $1,750,000.

17.   Colon immediately recommended and implemented a speculative an unsuitable leveraged investment strategy. From the inception of the account through June 2013, Colon recommended that Waldemar generally invest approximately **$4.8 million** in a Puerto Rico Commonwealth Government Development Bank bond rated BBB at the time of purchase and

approximately **$230,000** in a Puerto Rico Public Finance Corporation bond rated BBB- at the time of purchase financed with a margin loan of approximately **$3.3 million**

18.   This investment strategy was speculative and unsuitable as the Puerto Rico bonds were inherently high risk investments. Puerto Rico suffers from long-term financial and economic deficiencies that rendered its credit increasingly more speculative. The following are factors that have contributed and/or are indicative of Puerto Rico's rapidly deteriorating financial and economic condition:

(1) Puerto Rico has been in **recession since 2006**;

(2) **Puerto Rico's debt load remains spectacularly high and is estimated to be at least $70 billion,** higher than every state except New York and California and **its debt per capita is 10 times the average of the 50 states;**

(3) Puerto Rico residents earn relatively low incomes resulting in its **debt, as measured on the basis of personal income, equal to 26 times of the average state;**

(4) Puerto Rico has in excess of **$30 billion in unfunded pension liabilities** - the worst funded in the U.S.;

(5) Puerto Rico suffers from long-standing high **unemployment in excess of 13%** - the highest in the U.S.;

(6) Puerto Rico's **labor force participation rate is abysmally low and approximately 20% below the U.S.;**

(7) Puerto Rico is facing grim demographic realities including a shrinking population and an exodus off the island; and

(8) Puerto Rico is a territory and legally **unable to seek bankruptcy relief.**

19.   By early 2012, the bonds that Colon had sold to Waldemar were negatively impacted by Puerto Rico's declining economic and fiscal condition. In fact, the bonds that Colon recommended to Waldemar in 2012 were rated just one and two notches above speculative/non-

investment grade or what is commonly referred to as "junk" by S&P at the time of purchase. By March 2013, the Puerto Rico Commonwealth Government Development Bank bond had been downgraded to BBB-, one notch above junk. The low credit rating and quality of the bonds that Colon sold to Waldemar and the downgrade were not ever discussed by Colon with Waldemar.

20. Colon's fatally flawed investment strategy of concentrating all of the assets in Waldemar's SANTANDER account completely in high risk Puerto Rico debt. Colon failed to diversify Waldemar's account at all. By concentrating all of Waldemar's securities in speculative Puerto Debt, Colon further heightened the level of risk to which Waldemar was unknowingly exposed.

21. Colon's use of excessive leverage coupled with a concentrated portfolio of speculative Puerto Rico debt only served to exacerbate the level of risk to completely unsuitable and unacceptable levels. The investment strategy that Colon employed was grossly unsuitable, allowed virtually no room for error and would certainly decimate Waldemar's equity if Puerto Rico bond prices actually reflected their inherent risks. Regrettably, this is exactly what happened.

22. Colon failed to adequately explain to Waldemar the risks attendant to his leveraged and concentrated investment strategy.

### b. Oriental Financial recommended a high risk and unsuitable leveraged investment strategy

23. In or about February 2013, Waldemar sold additional WRJ vending machine assets for $2 million. By this time, Waldemar had transferred his commercial bank accounts from Banco Santander to Oriental Bank and Trust ("Oriental Bank"). Nohan Rosali, Waldemar's friend and the manager of the Oriental Bank branch where Waldemar banked, introduced Waldemar to Pascual, a financial advisor with ORIENTAL FINANCIAL, a related entity.

24.     Pascual met with Waldemar and Waldemar informed him that he was interested in investing $1.5 million from the sale of his vending machine business in investments that would generate income while also preserving his principal. Pascual assured Waldemar that he could achieve his objective of generating income while preserving his principal in a diversified bond portfolio.

25.     Based upon Pascual's representations, Waldemar funded his newly formed ORIENTAL FINANCIAL account (no. Redacted with $1.5 million in late February 2013.

26.     Pascual recommended and implemented a speculative an unsuitable leveraged strategy. Specifically, he recommended that Waldemar purchase **$7,488,555** in bonds and finance the purchases with a margin loan of approximately **$6 million**. Pascual recommended a grossly unsuitable and excessive degree of leverage. By implementing a strategy where Waldemar borrowed approximately **$6 million** to invest in securities, Waldemar had equity of merely **20%** in his portfolio. Given this high level of leverage, a modest downward move in the value of the underlying bonds could trigger a margin call and swiftly eliminate Waldemar's capital.

27.     In February 2013, Pascual recommended that Waldemar invest **$2,238,550** in high risk and unsuitable Puerto Rico bonds. As detailed above, Puerto Rico bonds were inherently high risk and low quality bonds. Investing approximately **30%** of Waldemar's leveraged portfolio in high risk Puerto Rico bonds further exacerbated the risks in the portfolio.

28.     In February 2013, Pascual also recommended that Waldemar invest **$5,250,000** in a long duration Federal Home Loan Banks bond. Although the bond was of a high credit quality, its long duration of twenty years created a high degree of interest rate risk or sensitivity. In other words, if interest rates rose, the bond's price would decline significantly due to its long duration. If an investor held the bond until maturity, then it was a very high probability that the investor would receive the return of his capital. Pascual's strategy of concentrating approximately **70%** of Waldemar's account in the single long duration bond further increased the level of interest rate risk

to which he was exposed. Unfortunately, Pascual's leveraged and concentrated strategy all but assured Waldemar that he would never recover his capital at maturity.

### c. Oriental Financial continued to implement an unsuitable and reckless leveraged investment strategy for Waldemar's consolidated investment account

29. In June 2013, Waldemar became dissatisfied with Colon and SANTANDER and transferred his bonds and the related margin loan from SANTANDER to ORIENTAL FINANCIAL and consolidated all of his securities holdings with Pascual and ORIENTAL FINANCIAL.

30. Pascual assured Waldemar that he would make all appropriate changes to the newly consolidated portfolio to further diversify the portfolio and reduce the level of risk in the portfolio.

31. In June and July 2013, Pascual recommended that Waldemar sell certain bonds and buy others and implemented the trades.

32. Pascual represented to Waldemar that the level of margin in the account was acceptable and that he should continue with the same general level of margin borrowing. Pascual assured Waldemar that he would recommend any warranted changes to the level of margin credit used in the portfolio.

33. By the end of July 2013, Waldemar had bonds in his account valued at **$11,041,100**, a **$8,725,452** margin loan and equity of **$2,315,648**. In other words, the equity in his account was merely **21%**. The account was dangerously leveraged and a modest downward move in the bonds would trigger margin calls and swiftly eliminate his equity.

34. Additionally, as of the end of July 2013, **over 50%** of Waldemar's account was concentrated in high risk and unsuitable Puerto Rico debt. By this time, all of the Puerto Rico bonds in Waldemar's ORIENTAL FINANCIAL account are rated BBB-, the lowest level of investment grade bonds and a single level above junk.

### c. Santander and Oriental Financial's reckless mismanagement caused Waldemar staggering losses

35.    In August and September 2013, Puerto Rico bonds declined dramatically. Furthermore, the $5,250,000 investment in a Federal Home Loan Banks bond that Pascual recommended and which Waldemar purchased at $100 was now down to $84 as interest rates spiked which sent the value of the bonds down sharply.

36.    In or about August 2013, Pascual's employment with ORIENTAL FINANCIAL terminated. Jose Candelario ("Candelario") replaced Pascual as Waldemar's ORIENTAL FINANCIAL fianncial advisor. Candelario recommended that Waldemar sell nearly all of his securities and pay down nearly the entire margin loan. Waldemar followed his recommendation.

37.    In August and September, Waldemar realized **$2,246,480** in losses. In December 2013, Waldemar sold additional bonds and realized an additional **$297,949** in losses. In April 2013, Waldemar realized an additional **$66,793** in losses. Waldemar had **$239,316** in unrealized losses as well as of April 2014 in his remaining bonds.

38.    Nearly all of the capital he had invested in his SANTANDER and ORIENTAL FINANCIAL accounts had been lost within just sixteen months.

39.    Pascual and ORIENTAL FINANCIAL failed to adequately disclose to Waldemar the credit risks of the Puerto Rico bonds, the interest rate risks of the Federal Home Loan Banks bonds, the risks of concentrating his portfolio in low credit quality and high risk Puerto Rico bonds, the risks of concentrating his portfolio in long duration bonds, and the risks of an excessively leveraged portfolio, amongst other things.

40.     SANTANDER and ORIENTAL FINANCIAL'S actions have caused Claimant damages in excess of $1,000,000.[1]

## COUNT I - BREACH OF FIDUCIARY DUTY - ARTICLE 1802 OF THE CIVIL CODE OF PUERTO RICO. 31 L.P.R.A. §5141
### (as to Santander Securities)

41.     Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

42.     In the investment advisory and broker\customer relationship with Waldemar, SANTANDER, and its employees were under a fiduciary duty to Waldemar to:

   a.     recommend investments only after studying them sufficiently to become informed as to their nature, price and financial prognosis;

   b.     refrain from self dealing;

   c.     inform the customer of the risks involved in purchasing and selling a security;

   d.     perform orders promptly and in a manner to serve the customer's best interests;

   e.     transact business only after receiving approval from the customer; and

   f.     not to misrepresent any material fact to a transaction.

43.     The conduct of SANTANDER was in direct contravention of the fiduciary duties owed by SANTANDER to Waldemar.

44.     As a result of the breaches of fiduciary duty, Waldemar has been damaged and SANTANDER is the proximate cause thereof.

---

[1] Damages are stated solely for the purpose of complying with FINRA Code of Arbitration Procedure section 12900.

45.     SANTANDER'S actions were willful, wanton and reckless and justify an award of punitive damages.

WHEREFORE, WRI VENDING MACHINES, INC., demands an award against SANTANDER SECURITIES, LLC, for damages, rescission, punitive damages, interest, costs, attorney's fees, and such other and further relief this Panel deems just and proper.

## COUNT II - NEGLIGENCE - ARTICLE 1802 OF THE CIVIL CODE OF PUERTO RICO, 31 L.P.R.A. §5141
(as to Santander Securities)

46.     Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

47.     At all times material hereto, SANTANDER owed the highest duty of care to Waldemar who enjoyed a fiduciary relationship with SANTANDER.

48.     SANTANDER breached its duty of care to Waldemar.

49.     SANTANDER'S negligence is the direct and proximate cause of damages to Waldemar.

WHEREFORE, WRI VENDING MACHINES, INC., demands an award against SANTANDER SECURITIES, LLC, for damages, rescission, interest, costs, attorney's fees, and such other and further relief this Panel deems just and proper.

## COUNT III - NEGLIGENT SUPERVISION - ARTICLE 1802 OF THE CIVIL CODE OF PUERTO RICO, 31 L.P.R.A. §5141
(as to Santander Securities)

50.     Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

51.     At all times material hereto, SANTANDER had a duty to supervise its employees.

52.     SANTANDER breached its duty of care by failing to supervise its employees.

53.     SANTANDER'S negligence is the direct and proximate cause of damages to Waldemar.

WHEREFORE, WRI VENDING MACHINES, INC., demands an award against SANTANDER SECURITIES, LLC, for damages, rescission, interest, costs, attorney's fees, and such other and further relief this Panel deems just and proper.

### COUNT IV - FRAUD - ARTICLE 1802 OF THE CIVIL CODE OF PUERTO RICO, 31 L.P.R.A. §5141
(as to Santander Securities)

54.     Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

55.     SANTANDER made the false representations and material omissions.

56.     SANTANDER knew or should have known that the representations were false.

57.     SANTANDER intended that the representations induce Waldemar to purchase and/or hold securities.

58.     Waldemar justifiably relied on SANTANDER'S representations and has been damaged.

WHEREFORE, WRI VENDING MACHINES, INC., demands an award against SANTANDER SECURITIES, LLC, for damages, rescission, punitive damages, interest, costs, attorney's fees, and such other and further relief this Panel deems just and proper.

### COUNT V - BREACH OF CONTRACT
(as to Santander Securities)

59.     Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

60.     Waldemar entered into a contract with SANTANDER.

61.     SANTANDER breached its contract with Waldemar.

62.     Waldemar has been damaged by SANTANDER'S breach of contract.

WHEREFORE. WRI VENDING MACHINES, INC.. demands an award against SANTANDER SECURITIES, LLC. for damages, rescission. interest, costs, attorney's fees. and such other and further relief this Panel deems just and proper.

## COUNT VI - BREACH OF CONTRACT - THIRD PARTY BENEFICIARY
(as to Santander Securities)

63.     Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

64.     SANTANDER entered into a contract with FINRA wherein they agreed to abide by all FINRA rules as well as applicable law which was intended to benefit its customers.

65.     As detailed above, SANTANDER breached said agreement by violating FINRA rules amongst other things.

66.     Waldemar has been damaged by SANTANDER'S breach of contract.

WHEREFORE, WRI VENDING MACHINES. INC., demands an award against SANTANDER SECURITIES. for damages, rescission. interest. costs. attorney's fees. and such other and further relief this Panel deems just and proper.

## COUNT VII - VIOLATION OF THE PUERTO RICO UNIFORM SECURITIES ACT
(as to Santander Securities)

67.     Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

68.     SANTANDER offered and sold securities by means of false statements of material fact and by omitting to state material facts needed to prevent statements made. in the light of the circumstances under which they were made. from leading to misunderstanding by Waldemar.

69.     Pursuant to 10 L.P.R.A. § 890(a)(2). Waldemar is entitled to damages and/or rescission. costs and reasonable attorney's fees.

WHEREFORE, WRI VENDING MACHINES, INC., demands an award against SANTANDER SECURITIES, LLC, for damages, rescission, interest, costs, reasonable attorney's fees and such other and further relief this Panel deems just and proper.

## COUNT VIII - VIOLATION OF SECTIONS 10(b) OF THE SECURITIES EXCHANGE ACT, AND RULE 10b-5 OF THE SECURITIES AND EXCHANGE COMMISSION
(as to Santander Securities)

70.     Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

71.     In the sale of securities to Waldemar as set forth above, SANTANDER has indirectly and directly:

a.     employed devices, schemes or artifices to defraud Waldemar;

b.     made untrue statements of a material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

c.     engaged in acts, practices and courses of conduct of business, which operated as a fraud and deceit upon Waldemar.

72.     By reason of the foregoing, SANTANDER violated 15 U.S.C. §78j(b) and Rule 10b-5 promulgated by thereunder by the Securities and Exchange Commission.

73.     As a result of the foregoing, Waldemar sustained substantial economic damages.

WHEREFORE, WRI VENDING MACHINES, INC., demands an award against SANTANDER SECURITIES, LLC, for damages, rescission, interest, costs, attorney's fees, and such other and further relief this Panel deems just and proper.

## COUNT IX - BREACH OF FIDUCIARY DUTY - ARTICLE 1802 OF THE CIVIL CODE OF PUERTO RICO, 31 L.P.R.A. §5141
(as to Oriental Financial)

74. Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

75. In the investment advisory and broker\customer relationship with Waldemar. ORIENTAL FINANCIAL and its employees were under a fiduciary duty to Waldemar to:

   a. recommend investments only after studying them sufficiently to become informed as to their nature, price and financial prognosis;

   b. refrain from self dealing;

   c. inform the customer of the risks involved in purchasing and selling a security;

   d. perform orders promptly and in a manner to serve the customer's best interests;

   e. transact business only after receiving approval from the customer; and

   f. not to misrepresent any material fact to a transaction.

76. The conduct of SANTANDER was in direct contravention of the fiduciary duties owed by ORIENTAL FINANCIAL to Waldemar.

77. As a result of the breaches of fiduciary duty, Waldemar has been damaged and ORIENTAL FINANCIAL is the proximate cause thereof.

78. ORIENTAL FINANCIAL 'S actions were willful, wanton and reckless and justify an award of punitive damages.

WHEREFORE, WRI VENDING MACHINES, INC., demands an award against ORIENTAL FINANCIAL SERVICES CORP., for damages, rescission, punitive damages, interest, costs, attorney's fees, and such other and further relief this Panel deems just and proper.

## COUNT X - NEGLIGENCE - ARTICLE 1802 OF THE CIVIL CODE OF PUERTO RICO, 31 L.P.R.A. §5141
(as to Oriental Financial)

79.     Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

80.     At all times material hereto, ORIENTAL FINANCIAL owed the highest duty of care to Waldemar who enjoyed a fiduciary relationship with ORIENTAL FINANCIAL .

81.     ORIENTAL FINANCIAL breached its duty of care to Waldemar.

82.     ORIENTAL FINANCIAL `S negligence is the direct and proximate cause of damages to Waldemar.

WHEREFORE, WRI VENDING MACHINES, INC., demands an award against ORIENTAL FINANCIAL SERVICES CORP., for damages, rescission, interest, costs, attorney`s fees, and such other and further relief this Panel deems just and proper.

## COUNT XI - NEGLIGENT SUPERVISION - ARTICLE 1802 OF THE CIVIL CODE OF PUERTO RICO, 31 L.P.R.A. §5141
(as to Oriental Financial)

83.     Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

84.     At all times material hereto, ORIENTAL FINANCIAL had a duty to supervise its employees.

85.     ORIENTAL FINANCIAL breached its duty of care by failing to supervise its employees.

86.     ORIENTAL FINANCIAL `S negligence is the direct and proximate cause of damages to Waldemar.

WHEREFORE, WRI VENDING MACHINES, INC., demands an award against ORIENTAL FINANCIAL SERVICES CORP., for damages, rescission, interest, costs, attorney's fees, and such other and further relief this Panel deems just and proper.

## COUNT XII - FRAUD - ARTICLE 1802 OF THE CIVIL CODE OF PUERTO RICO, 31 L.P.R.A. §5141
(as to Oriental Financial)

87.     Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

88.     ORIENTAL FINANCIAL made the false representations and material omissions.

89.     ORIENTAL FINANCIAL knew or should have known that the representations were false.

90.     ORIENTAL FINANCIAL intended that the representations induce Waldemar to purchase and/or hold securities.

91.     Waldemar justifiably relied on ORIENTAL FINANCIAL'S representations and has been damaged.

WHEREFORE, WRI VENDING MACHINES, INC., demands an award against ORIENTAL FINANCIAL SERVICES CORP., for damages, rescission, punitive damages, interest, costs, attorney's fees, and such other and further relief this Panel deems just and proper.

## COUNT XIII - BREACH OF CONTRACT
(as to Oriental Financial)

92.     Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

93.     Waldemar entered into a contract with ORIENTAL FINANCIAL

94.     ORIENTAL FINANCIAL breached its contract with Waldemar.

95.     Waldemar has been damaged by ORIENTAL FINANCIAL'S breach of contract.

SONN & EREZ, PLC/ALDARONDO & LOPEZ-BRAS, P.S.C.

WHEREFORE, WRI VENDING MACHINES, INC., demands an award against ORIENTAL FINANCIAL SERVICES CORP., for damages, rescission, interest, costs, attorney's fees, and such other and further relief this Panel deems just and proper.

## COUNT XIV - BREACH OF CONTRACT - THIRD PARTY BENEFICIARY
(as to Oriental Financial)

96.     Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

97.     ORIENTAL FINANCIAL entered into a contract with FINRA wherein they agreed to abide by all FINRA rules as well as applicable law which was intended to benefit its customers.

98.     As detailed above, ORIENTAL FINANCIAL breached said agreement by violating FINRA rules amongst other things.

99.     Waldemar has been damaged by ORIENTAL FINANCIAL'S breach of contract.

WHEREFORE, WRI VENDING MACHINES, INC., demands an award against ORIENTAL FINANCIAL SERVICES CORP., for damages, rescission, interest, costs, attorney's fees, and such other and further relief this Panel deems just and proper.

## COUNT XV - VIOLATION OF THE PUERTO RICO UNIFORM SECURITIES ACT
(as to Oriental Financial)

100.    Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth herein.

101.    ORIENTAL FINANCIAL offered and sold securities by means of false statements of material fact and by omitting to state material facts needed to prevent statements made, in the light of the circumstances under which they were made, from leading to misunderstanding by Waldemar.

102.    Pursuant to 10 L.P.R.A. § 890(a)(2), Waldemar is entitled to damages and/or rescission, costs and reasonable attorney's fees.

WHEREFORE, WRI VENDING MACHINES, INC.. demands an award against ORIENTAL

FINANCIAL SERVICES CORP., for damages, rescission, interest, costs, reasonable attorney's fees

and such other and further relief this Panel deems just and proper.

### COUNT XVI - VIOLATION OF SECTIONS 10(b) OF THE SECURITIES EXCHANGE ACT. AND RULE 10b-5 OF THE SECURITIES AND EXCHANGE COMMISSION
(as to Oriental Financial)

103.   Claimant realleges and adopts paragraphs 1 through 40 above as if fully set forth

herein.

104.   In the sale of securities to Waldemar as set forth above, ORIENTAL FINANCIAL

has indirectly and directly:

   a.   employed devices, schemes or artifices to defraud Waldemar;

   b.   made untrue statements of a material fact or omitted to state material
        facts necessary in order to make the statements made, in light of the
        circumstances under which they were made, not misleading; and

   c.   engaged in acts, practices and courses of conduct of business, which
        operated as a fraud and deceit upon Waldemar.

105.   By reason of the foregoing, ORIENTAL FINANCIAL violated 15 U.S.C. §78j(b) and

Rule 10b-5 promulgated by thereunder by the Securities and Exchange Commission.

106.   As a result of the foregoing, Waldemar sustained substantial economic damages.

WHEREFORE, WRI VENDING MACHINES, INC.. demands an award against ORIENTAL

FINANCIAL SERVICES CORP.. for damages, rescission, interest, costs, attorney's fees, and such

other and further relief this Panel deems just and proper.

## REQUEST FOR ALL PUBLIC PANEL

Claimant hereby requests an All Public Panel in this arbitration proceeding.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished via email and U.S. Mail to: Lisa Lasher, Case Administrator, Financial Industry Regulatory Authority, Boca Center - Tower 1, 5200 Town Center Circle, Suite 200, Boca Raton, FL 33486, lisa.lasher@finra.org; fl-main@finra.org; Lawrence Carter, Santander Securities LLC. 75 State Street, Mail Code: MA1 ST 04-06, Boston, MA 02109; and Ana R. Suarez, Chief Compliance Officer, Oriental Financial Services, Tower 9th Floor, 997 San Roberto Street, San Juan, PR 00926 on this _____ day of July, 2014.

SONN & EREZ
*Attorneys for Claimant*
Southeast Financial Center
200 S. Biscayne Blvd., Suite 4330
Miami, FL 33131
Telephone: (954) 763-4700
Telephone: (305) 428-8530
Facsimile: (954) 763-1866

By: _____
        Jeffrey Erez, Esq.
        Florida Bar No.: 0102369

*Attorneys for Claimant*
ALDARONDO & LÓPEZ-BRAS
Eliezer A. Aldarondo-Lopez
Puerto Rico Bar No. 16714
Eliezer Aldarondo-Ortiz
Puerto Rico Bar No. 5802
ALB Plaza, Suite 400
16 Las Cumbres Ave. (Road 199)
Guaynabo, P.R. 00969
Telephone: (787) 474-5447
Facsimile: (787) 474-5451

# FINRA ARBITRATION Submission Agreement

In the Matter of the Arbitration Between

### Name(s) of Claimant(s)

WRI Vending Machines, Inc.,

Case No.: 14-01450

vs.

### Name(s) of Respondent(s)

Santander Securities, LLC and
Oriental Financial Services Corp.

---

1. The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure.

2. The parties hereby state that they or their representative(s) have read the procedures and rules of FINRA relating to arbitration, and the parties agree to be bound by these procedures and rules.

3. The parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The parties further agree and understand that the arbitration will be conducted in accordance with the FINRA Code of Arbitration Procedure.

4. The parties agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement. The parties further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5. The parties hereto have signed and acknowledged the foregoing Submission Agreement.

---

Waldemar Rivera Izquierdo, as authorized representative of
WRI Vending Machines, Inc.

Date