# EXHIBIT H



Print

## 95-16 Predispute Arbitration Clauses In Customer Agreements

| SUGGESTED ROUTING |
| --- |
| Senior Management<br>Legal & Compliance<br>Training |

**Executive Summary**

The NASD is alerting its members that customer agreements used by some members contain predispute arbitration provisions that are contrary to Article III, Section 21 of the NASD Rules of Fair Practice and/or the NASD Code of Arbitration Procedure. Members are urged to take prompt steps to ensure that their customer agreements fully comply with these requirements.

**Background**

In 1989, the Securities and Exchange Commission (SEC) approved a number of amendments to the NASD Code of Arbitration Procedure in an effort to improve securities industry arbitration as a fair, expeditious, and economical means for the resolution of disputes. In addition, it approved an amendment to Article III, Section 21 of the NASD Rules of Fair Practice to impose important specific disclosures and other requirements for predispute arbitration clauses in customer agreements. (See *Notice to Members 89-58*.) Recently, it has come to the attention of the NASD and the SEC that customer agreements used by some NASD members contain provisions that are inconsistent with this NASD rule or that subvert its purposes. NASD members should take prompt steps to ensure that their customer agreements fully comply with this important rule and the NASD Code of Arbitration Procedure.

Specifically, Section 21(f)(4) of the NASD Rules of Fair Practice, as amended, prohibits the use in any customer agreement of any language that (a) limits or contradicts the rules of the NASD or any other self-regulatory organization; (b) limits the ability of a party to file a claim in arbitration; or (c) limits the ability of the arbitrators to make an award under the arbitration rules of a self-regulatory organization and applicable law. The NASD Code of Arbitration Procedure sets forth the applicable authority and procedures in these areas.

**Hearing Location**

Customer agreements used by some members attempt to dictate the location for the arbitration hearing. For example, some require that the hearing be held in New York or Denver regardless of where the customer resides. Any such provision is inconsistent with Section 26 of the NASD Code of Arbitration Procedure, which states that "the time and place for the initial hearing shall be determined by the Director of Arbitration and each hearing thereafter by the arbitrators." In 1989, the SEC noted that customer agreements "may not be used to restrict the situs of an arbitration hearing contrary to SRO rules." (See, Securities Exchange Act Release No. 26805.)

**Arbitration Panel Composition**

Compliance problems have also been raised by customer agreements which attempt to dictate the composition of an arbitration panel. Such provisions are contrary to Section 4 of the NASD Code of Arbitration Procedure, which states that the "Director of Arbitration shall compose and appoint panels of arbitrators." In addition, such provision is contrary to Section 19 of the NASD Code of Arbitration Procedure if it redefines who may serve as either a public or industry arbitrator.

**Time Limitations**

Section 15 of the NASD Code of Arbitration Procedure allows arbitration claims to be submitted unless six years have elapsed from the occurrence or event giving rise to the claim or controversy. However, Section 15 does not "extend applicable statutes of limitations" under state law. Consequently, customer agreements may not be used to shorten applicable statutes of limitations or to require that a time limitations question be judicially determined instead of being submitted to a panel of arbitrators pursuant to a submission under the Code of Arbitration Procedure.

**Claims and Awards**

Some customer agreements attempt to directly limit the ability of a customer to file a claim or to limit the authority of the arbitrators to make an award, including an award of punitive damages. Others attempt to do so indirectly by the use of a so-called "governing law clause." For example, certain customer agreements simply state that New York law will govern any dispute in arbitration, but do not disclose that New York law prohibits an award of punitive damages in arbitration. Where the governing law clause is used to limit an award, it violates Section 21(f) of the NASD Rules of Fair Practice. Indeed, in 1989 the SEC said that:

> "customer agreements cannot be used to curtail any rights that a party may otherwise have had in a judicial forum. If punitive damages or attorneys fees would be available under applicable law, then the agreement cannot limit parties' rights to request them, nor arbitrators' rights to award them." (See Securities Exchange Act Release No. 26805.)

In a case recently decided by the United States Supreme Court,

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, the customer agreement in question stated that New York law governed the agreement, but it was signed by the customer *before* the adoption of Section 21(f) of the NASD Rules of Fair Practice. Nevertheless, the U.S. Solicitor General and the SEC asked the Court to "leave no confusion as to the operation of Rule 21(f)(4) with respect to agreements signed **after** the Rule's effective date." They argued to the Court that:

> "NASD Rule 21(f)(4) forbids the inclusion in broker-client arbitration agreements of provisions limiting the ability of arbitrators to award relief that would be available in a judicial forum. The Rule has an effective date of September 7, 1989; with respect to agreements executed after that date, the Rule has the force of federal law and precludes the enforcement of contractual provisions that are inconsistent with its terms."[1]

**Other Problems**

Similar compliance problems are raised by provisions that attempt to limit the courts before whom awards may be confirmed or limit the role of arbitrators. Indeed, the use of a governing law clause or other clause anywhere within a customer agreement that thwarts any NASD arbitration provision will be deemed violative.

NASD members having arbitration provisions in customer agreements that are inconsistent with NASD rules may be subject to disciplinary action. NASD staff, District Business Conduct Committee, and arbitration panels will view provisions in agreements that can be construed as limiting the ability of customers to file claims or of arbitrators to issue awards as being inconsistent with NASD rules. NASD members should promptly review their customer agreements to ensure that they fully comply with NASD rules.

Questions concerning this Notice may be directed to Deborah Masucci, Vice President and Director of Arbitration, at (212) 858-4400.

---

[1] In its recent decision in this case, the Supreme Court declined to address customer agreements signed after the rule's effective date. However, the court held that, despite the limiting New York law clause in the customer agreement in issue, the arbitrators may impose punitive damages.

© FINRA. All rights reserved.

**SEE pp. 2-3**



Print

## 3110. Books and Records

**This rule is no longer applicable. NASD Rule 3110 (a, c, d, e, f, g, h, & j) has been superseded by FINRA Rule 4510 Series, NASD Rule 3110(i) has been superseded by FINRA Rule 3150. Please consult the appropriate FINRA Rules.**

### (a) Requirements

Each member shall make and preserve books, accounts, records, memoranda, and correspondence in conformity with all applicable laws, rules, regulations and statements of policy promulgated thereunder and with the Rules of this Association and as prescribed by SEC Rule 17a-3. The record keeping format, medium, and retention period shall comply with Rule 17a-4 under the Securities Exchange Act of 1934.

### (b) Marking of Customer Order Tickets

A person associated with a member shall indicate on the memorandum for each transaction in a non-exchange-listed security, as that term is defined in Rule 2320, the name of each dealer contacted and the quotations received to determine the best inter-dealer market; however, the requirements of this paragraph shall not apply if the member can establish and has documented that:

(1) two or more priced quotations for the security are displayed in an inter-dealer quotation system, as defined in Rule 2320(f), that permits quotation updates on a real-time basis for which NASD has access to historical quotation information; or

(2) the transaction is effected in compliance with Rule 2320(f)(3)(B) or (C).

### (c) Customer Account Information

Each member shall maintain accounts opened after January 1, 1991 as follows:

(1) for each account, each member shall maintain the following information:

(A) customer's name and residence;

(B) whether customer is of legal age;

(C) signature of the registered representative introducing the account and signature of the member or partner, officer, or manager who accepts the account; and

(D) if the customer is a corporation, partnership, or other legal entity, the names of any persons authorized to transact business on behalf of the entity;

(2) for each account other than an institutional account, and accounts in which investments are limited to transactions in open-end investment company shares that are not recommended by the member or its associated persons, each member shall also make reasonable efforts to obtain, prior to the settlement of the initial transaction in the account, the following information to the extent it is applicable to the account:

(A) customer's tax identification or Social Security number;

(B) occupation of customer and name and address of employer; and

(C) whether customer is an associated person of another member; and

(3) for discretionary accounts, in addition to compliance with subparagraphs (1) and (2) above, and Rule 2510(b) of these Rules, the member shall:

(A) obtain the signature of each person authorized to exercise discretion in the account;

(B) record the date such discretion is granted; and

(C) in connection with exempted securities other than municipals, record the age or approximate age of the customer.

(4) For purposes of this Rule, Rule 2310, and Rule 2510 the term "institutional account" shall mean the account of:

(A) a bank, savings and loan association, insurance company, or registered investment company;

        (B) an investment adviser registered either with the Securities and Exchange Commission under Section 203 of the Investment Advisers Act of 1940 or with a state securities commission (or any agency or office performing like functions); or

        (C) any other entity (whether a natural person, corporation, partnership, trust, or otherwise) with total assets of at least $50 million.

**(d) Record of Written Complaints**

Each member shall keep and preserve in each office of supervisory jurisdiction, as defined in Rule 3010, either a separate file of all written complaints of customers and action taken by the member, if any, or a separate record of such complaints and a clear reference to the files containing the correspondence connected with such complaint as maintained in such office.

**(e) "Complaint" Defined**

A "complaint" shall be deemed to mean any written statement of a customer or any person acting on behalf of a customer alleging a grievance involving the activities of those persons under the control of the member in connection with the solicitation or execution of any transaction or the disposition of securities or funds of that customer.

**(f) Requirements When Using Predispute Arbitration Agreements for Customers Accounts**

    (1) Any predispute arbitration clause shall be highlighted and shall be immediately preceded by the following language in outline form.

    This agreement contains a predispute arbitration clause. By signing an arbitration agreement the parties agree as follows:

        (A) All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

        (B) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

        (C) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

        (D) The arbitrators do not have to explain the reason(s) for their award.

        (E) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

        (F) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

        (G) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

    (2)(A) In any agreement containing a predispute arbitration agreement, there shall be a highlighted statement immediately preceding any signature line or other place for indicating agreement that states that the agreement contains a predispute arbitration clause. The statement shall also indicate at what page and paragraph the arbitration clause is located.

        (B) Within thirty days of signing, a copy of the agreement containing any such clause shall be given to the customer who shall acknowledge receipt thereof on the agreement or on a separate document.

    (3)(A) A member shall provide a customer with a copy of any predispute arbitration clause or customer agreement executed between the customer and the member, or inform the customer that the member does not have a copy thereof, within ten business days of receipt of the customer's request. If a customer requests such a copy before the member has provided the customer with a copy pursuant to subparagraph (2)(B) of this paragraph, the member must provide a copy to the customer by the earlier date required by this subparagraph (3)(A) or by subparagraph (2)(B).

        (B) Upon request by a customer, a member shall provide the customer with the names of, and information on how to contact or obtain the rules of, all arbitration forums in which a claim may be filed under the agreement.

    (4) No predispute arbitration agreement shall include any condition that:

        (A) limits or contradicts the rules of any self-regulatory organization;

        (B) limits the ability of a party to file any claim in arbitration;

(C) limits the ability of a party to file any claim in court permitted to be filed in court under the rules of the forums in which a claim may be filed under the agreement;

(D) limits the ability of arbitrators to make any award.

(5) If a customer files a complaint in court against a member that contains claims that are subject to arbitration pursuant to a predispute arbitration agreement between the member and the customer, the member may seek to compel arbitration of the claims that are subject to arbitration. If the member seeks to compel arbitration of such claims, the member must agree to arbitrate all of the claims contained in the complaint if the customer so requests.

(6) All agreements shall include a statement that "No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein."

(7) The provisions of this Rule shall become effective on May 1, 2005. The provisions of subparagraph (3) shall apply to all members as of the effective date of this Rule regardless of when the customer agreement in question was executed. Otherwise, agreements signed by a customer before May 1, 2005 are subject to the provisions of this Rule in effect at the time the agreement was signed.

**(g) Negotiable Instruments Drawn From A Customer's Account**

No member or person associated with a member shall obtain from a customer or submit for payment a check, draft, or other form of negotiable paper drawn on a customer's checking, savings, share, or similar account, without that person's express written authorization, which may include the customer's signature on the negotiable instrument. Each member shall maintain this authorization for a period of three years. This provision shall not, however, require maintenance of copies of negotiable instruments signed by customers.

**(h) Order Audit Trail System Record keeping Requirements**

(1) Each member that is a Reporting Member, as that term is defined in Rule 6951(m), shall record and maintain, with respect to each order, as that term is defined in Rule 6951(i), for such security that is received or executed at its trading department:

(A) an identification of each registered person who receives the order directly from a customer;

(B) an identification of each registered person who executes the order; and

(C) when an order is originated by the member and transmitted manually to another department, an identification of the department that originated the order.

(2) Each Reporting Member shall maintain and preserve records of the information required to be recorded under paragraph (h)(1) of this Rule for the period of time and accessibility specified in SEC Rule 17a-4(b).

(3) The records required to be maintained and preserved under paragraph (h)(1) of this Rule may be immediately produced or reproduced on "micrographic media" as defined in SEC Rule 17a-4(f)(1)(i) or by means of "electronic storage media" as defined in SEC Rule 17a-4(f)(1)(ii) that meet the conditions set forth in SEC Rule 17a-4(f) and be maintained and preserved for the required time in that form.

**(i) Holding of Customer Mail**

Upon the written instructions of a customer, a member may hold mail for a customer who will not be at his or her usual address for the period of his or her absence, but (A) not to exceed two months if the member is advised that such customer will be on vacation or traveling or (B) not to exceed three months if the customer is going abroad.

**(j) Changes in Account Name or Designation**

Before any customer order is executed, there must be placed upon the memorandum for each transaction, the name or designation of the account (or accounts) for which such order is to be executed. No change in such account name(s) (including related accounts) or designation(s) (including error accounts) shall be made unless the change has been authorized by a member or a person(s) designated under the provisions of NASD rules. Such person must, prior to giving his or her approval of the account designation change, be personally informed of the essential facts relative thereto and indicate his or her approval of such change in writing on the order or other similar record of the member. The essential facts relied upon by the person approving the change must be documented in writing and preserved for a period of not less than three years, the first two years in an easily accessible place, as the term "easily accessible place" is used in SEC Rule 17a-4.

For purposes of this paragraph (j), a person(s) designated under the provisions of NASD rules to approve account name or designation changes must pass a qualifying principal examination appropriate to the business of the firm.

**Cross References–**

Rule 2860(b)(17), Options, Maintenance of Records
Rule 8210, Reports and Inspection of Books for Purpose of Investigating Complaints
Rule 9552, Failure to Provide Information or Keep Information Current
IM-2310-2, Fair Dealing with Customers

Amended by SR-FINRA-2011-052 eff. May 31, 2012.
Amended by SR-FINRA-2010-052 eff. Dec. 5, 2011.
Amended by SR-FINRA-2010-003 eff. June 28, 2010.
Amended by SR-FINRA-2007-024 eff. Sep. 8, 2009.
Amended by SR-NASD-2004-130 eff. Sep. 28, 2007.
Amended by SR-NASD-2005-087 eff. Aug. 1, 2006.
Amended by SR-NASD-2005-103 eff. Aug. 29, 2005.
Amended by SR-NASD-98-74 eff. May 1, 2005
Amended by SR-NASD-2005-045 eff. April 12, 2005
Amended by SR-NASD-2002-162 & SR-NASD-2004-116 eff. Jan. 31, 2005
Amended by SR-NASD-2004-175 eff. Jan 3, 2005
Amended by SR-NASD-2003-110 eff. June 28, 2004
Amended by SR-NASD-2003-131 eff. March 31, 2004
Amended by SR-NASD-00-20 eff. Nov. 24, 2000
Amended by SR-NASD-98-38 eff. according to schedule in Rule 6957
Amended by SR-NASD-98-35 eff. May 29, 1998
Amended by SR-NASD-98-31 eff. Apr. 7, 1998
Amended by SR-NASD-98-10 postponed eff. date
Amended by SR-NASD-97-56 eff. according to schedule in Rule 6957
Amended by SR-NASD-97-24 eff. Feb. 15, 1998
Amended by SR-NASD-96-28 eff. Dec 2, 1996
Amended by SR-NASD-95-39 eff. Oct 10, 1996
Amended by SR-NASD-95-13 eff. June 9, 1995
Amended by SR-NASD-92-12 eff. Sept. 6, 1994
Amended by SR-NASD-92-28 eff. Oct. 28, 1992
Amended by SR-NASD-90-09 & SR-NASD-90-39 eff. May 2, 1990 eff. for accounts opened and recommendations made after Jan. 1, 1991
Amended by SR-NASD-88-21 eff. Aug. 1, 1988, May 10, 1989
Amended by SR-NASD-87-23 eff. Aug. 3, 1987
Amended by SR-NASD-86-17 eff. Oct, 15, 1986

**Selected Notices:** 86-29, 86-69, 87-15, 88-40, 88-83, 88-91, 89-58, 90-12, 90-52, 91-46, 92-65, 95-16, 95-54, 95-85, 96-44, 96-82, 97-01, 98-11, 98-33, 98-47, 98-73, 00-78, 04-15, 04-36, 04-71, 05-08, 07-40, 10-26, 11-19, 12-13.

© FINRA. All rights reserved.



Print

## 2268. Requirements When Using Predispute Arbitration Agreements for Customer Accounts

(a) Any predispute arbitration clause shall be highlighted and shall be immediately preceded by the following language in outline form.

This agreement contains a predispute arbitration clause. By signing an arbitration agreement the parties agree as follows:

(1) All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

(2) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

(3) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

(4) The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.

(5) The panel of arbitrators may include a minority of arbitrators who were or are affiliated with the securities industry.

(6) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

(7) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

(b)(1) In any agreement containing a predispute arbitration agreement, there shall be a highlighted statement immediately preceding any signature line or other place for indicating agreement that states that the agreement contains a predispute arbitration clause. The statement shall also indicate at what page and paragraph the arbitration clause is located.

(2) Within thirty days of signing, a copy of the agreement containing any such clause shall be given to the customer who shall acknowledge receipt thereof on the agreement or on a separate document.

(c)(1) A member shall provide a customer with a copy of any predispute arbitration clause or customer agreement executed between the customer and the member, or inform the customer that the member does not have a copy thereof, within ten business days of receipt of the customer's request. If a customer requests such a copy before the member has provided the customer with a copy pursuant to paragraph (b)(2) above, the member must provide a copy to the customer by the earlier date required by this paragraph (c)(1) or by paragraph (b)(2).

(2) Upon request by a customer, a member shall provide the customer with the names of, and information on how to contact or obtain the rules of, all arbitration forums in which a claim may be filed under the agreement.

(d) No predispute arbitration agreement shall include any condition that:

(1) limits or contradicts the rules of any self-regulatory organization;

(2) limits the ability of a party to file any claim in arbitration;

(3) limits the ability of a party to file any claim in court permitted to be filed in court under the rules of the forums in which a claim may be filed under the agreement;

(4) limits the ability of arbitrators to make any award.

(e) If a customer files a complaint in court against a member that contains claims that are subject to arbitration pursuant to a predispute arbitration agreement between the member and the customer, the member may seek to compel arbitration of the claims that are subject to arbitration. If the member seeks to compel arbitration of such claims, the member must agree to arbitrate all of the claims contained in the complaint if the customer so requests.

(f) All agreements shall include a statement that "No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such

forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein."

(g) The provisions of this Rule shall become effective on May 1, 2005. The provisions of paragraph (c) shall apply to all members as of the effective date of this Rule regardless of when the customer agreement in question was executed. Otherwise, agreements signed by a customer before May 1, 2005 are subject to the provisions of this Rule in effect at the time the agreement was signed.

Amended by SR-FINRA-2011-024 eff. Dec. 5, 2011.
Amended by SR-FINRA-2010-052 eff. Dec. 5, 2011.
Amended by SR-NASD-98-74 eff. June 1, 2005.
Amended by SR-NASD-92-28 eff. Oct. 28, 1992.
Adopted by SR-NASD-89-19 eff. May 10, 1989.

**Selected Notices:** 89-21, 89-58, 92-37, 92-65, 95-16, 95-85, 05-09, 05-32, 11-19.

© FINRA. All rights reserved.